## COUNTY OF WASHINGTON, AUGUST TERM, 1856, AT SOUTH KINGSTON.

PRESENT:

Hon. SAMUEL AMES,
Hon. GEORGE A. BRAYTON,
Hon. ALFRED BOSWORTH.

## OTHANIEL FOSTER *v.* EZEKIEL H. & ANDREW J. BROWNING.

A parol license to the owners and occupants of one farm, in perpetuity, to pass and repass with their servants, horses, carts, carriages, &c., in a way prescribed over an adjoining farm, given by the owner of the latter farm, is, at law, revocable at his pleasure, notwithstanding it is executed by the licensee's expenditure upon the faith of it of money and labor in building the prescribed way, without payment or tender to the licensee of the amount so expended by him; and is not binding upon the successor in title of the licensor.

The licensee's remedy in such a case, if any, is in equity, upon the grounds of part performance and equitable estoppel.

When several issues have been submitted to a jury, some of which have been found for the plaintiff and one for the defendant, and a new trial is granted to the plaintiff on the ground of misdirection by the court of the jury in matter of law, pertaining solely to the latter issue, the new trial will not in general, unless the defendant consents thereto,

be confined to the latter issue, leaving the verdict to stand in favor of the applicant upon the issues found in his favor, but will be granted generally, so that all the issues may be resubmitted to a jury.

TRESPASS for breaking and entering the plaintiff's close in South Kingston, trampling down his grass, subverting his soil, casting down his walls, and carting sea-weed across the same ; the declaration containing two counts.

To this the defendants pleaded—

*First.* The general issue.

*Second.* A prescriptive right of way in the close of the plaintiff, appurtenant to the farm of one Abiel T. Browning, under whom one of the defendant's justified, as tenant, and the other as servant of the tenant, the passing with carts, &c., in accordance with the right appurtenant, over the close of the plaintiff along said way, and the necessary casting down a wall erected by the plaintiff across said way, and which obstructed the same.

*Third.* License from one Elisha Watson, a former owner of the plaintiff's close, to one Abiel T. Browning, the landlord of one of the defendants, (the other being the servant of the tenant,) his heirs and assigns, and his and their servants, farmers, tenants, and lessees, occupiers of a certain farm belonging to the said Abiel T., with their horses, cattle, carts, and carriages, at any and all times thereafter, to pass and repass to and from the farm of the said Abiel T. across the close described in the plaintiff's declaration over and along a described road or pass-way, there to be built by the said Abiel T., to the seashore, at his expense,—that the said Abiel T. had expended one hundred dollars in opening and building said road or pass-way,—that said license still remained in full force, and that under and by virtue of it one of the defendants, as tenant of the said Abiel T., and the other, as servant of said tenant, passed and repassed with their horses, cattle, carts, &c., along the way thus opened and built, and in order thereto cast down certain walls, built across the said way for the purpose of obstructing, and obstructing the same.

To these pleas the plaintiff replied, by traversing the right of way set up in the second plea, and the license in the third, and

issue was joined on these traverses, as well as on the general issue.

At the August term, 1855, upon trial of the cause before STAPLES, then Chief Justice, the general issue being waived, evidence was put in by the defendants, in support of their plea of a prescriptive way, tending to prove the same by a twenty years use, and also evidence of a license from Watson by parol in support of their plea of license, and of the execution of the same, by opening and building the road or passway by Browning, at the expense of one hundred dollars; and it appeared, amongst other things, that, in charging the jury, the presiding judge instructed them, that if they were satisfied from the proof that Elisha Watson, as alleged in the third plea, had given the license, though by parol, therein set forth, and that upon faith of the same Abiel T. Browning had expended his money in opening and building the way, that the license was not revocable at the pleasure of Watson or the plaintiff, unless the sum expended by Browning was first paid back or tendered to him; whereupon, the jury returned a verdict denying the right of way by use claimed by the defendants under their second plea, and affirming their right by license and expenditure on faith of the same, and justifying the alleged trespasses thereby, as claimed in the third plea.

The plaintiff filed a motion for a new trial at the same term, on the ground of misdirection of the judge in matter of law, pertaining to the third plea; specifying that he should have charged the jury that the license was revocable at pleasure, without restitution of the amount expended in opening and building the way, and have left it to the jury to find whether the license had been revoked or not.

At this term, _E. R. Potter_, of counsel for the plaintiff, with whom was _Dixon_, opened the above motion, and was proceeding to argue the revocability at pleasure of a parol license, such as was claimed and proved, to enter upon and use the land of another, when he was stopped by the court upon that question. He further submitted, that if a new trial was granted, it should only be had on the issue made upon the plea of license, on the law pertaining to which the jury had been misdirected, but that

the verdict on the plea of right of way by prescriptive use, found for the plaintiff, should stand.

*Updike,* with whom was *A. C. Greene,* of counsel for the defendants, shortly argued the irrevocability of a license executed, as this had been, by expenditures made upon the faith of it, as an equitable doctrine, which must have been introduced here before the supreme court was vested with equity powers. They also referred, generally, to the decisions in Maine, New Hampshire, Pennsylvania, and Ohio, as cited, and the doctrine contended for, in 2 Hare & Wallace's Am. Leading Cases, 682, 706.

They earnestly protested against the claim of the plaintiff, not made in his motion, but now urged in argument, that if a new trial were granted, it should be confined to the plea of license, since this would, in effect be, to turn the new trial into a mere assessment of damages against the defendants. They claimed it as their right, that if a new trial were ordered, it should be ordered generally, upon all the issues made up; and especially, as the motion for a new trial asked for a new trial generally, and not for a new trial on the plea of license alone.

AMES, C. J. This is a motion for a new trial, on the ground of misdirection of the jury, by the judge trying the cause, in matter of law. It appears that he, in substance, charged the jury, that if they were satisfied that Elisha Watson, the former owner of the *locus,* or, so-claimed, servient estate, had licensed by parol, Abiel T. Browning, his heirs and assigns, as owners or occupiers of the farm appurtenant to which the right of way was claimed, or so-claimed dominant estate, forever to use the way, and Browning had expended moneys in opening and building the way on the faith of the license, that the license thereby became irrevocable at law by Watson, or by the plaintiff, as his successor in title to the *locus,* at least, unless the moneys so expended had been first paid back or tendered to Browning; and that notwithstanding any proof that there might be of revocation of the license, unaccompanied by such payment or tender, it afforded a full defence to one of the defendants, as the tenant, and to the other, as the servant of the tenant, of Browning, against the trespasses complained of in using the way licensed, and in casting down walls built by the plaintiff in obstruction of the same.

We are all of opinion that the learned judge erred in this direction, to the jury, and that, consequently, a new trial of the cause must be awarded. The revocability of a mere license to enter upon and use the lands of the licensor, whether the license be by deed or by parol, is an ancient well-settled doctrine of the common law. A license of this sort, as such, is revocable in its very nature, without regard to the solemnities with which it is executed. If, however, the right intended to be granted was a fixed, and especially if a perpetual easement in lands of another, as a right of way or the like, to one and his heirs, or to one, his heirs and assigns, as owners of a certain estate, it never was the subject of a *license*, properly so called, but of a *grant*, and could be proved or maintained at the common law, only by the production of the sealed instrument entitled a grant, or by prescription or long use which supposes such an instrument.

But even if this were questionable at the common law, it is settled here, by the statute of this state, (Dig. 1844, p. 257,) entitled "An act regulating conveyances of real estate," which provides by its *first* section, "that no estate of inheritance or freehold, or for a term exceeding one year, in lands or tenements, shall be conveyed from one to another by deed, unless the same be in writing, signed, sealed, and delivered by the party making the same;" and which further provides, in substance, by the *second* section, that such conveyances shall be void, except between the parties and their heirs, unless also acknowledged and recorded.

The word "tenements," in the first section of this statute, by its own force, includes every thing which may be holden, and so, things incorporate, though they do not lie in tenure. Co. Lit. 6 *a.* 3 Kent's Com. 401, 4th ed. That this word is thus inclusive, in the sense in which it is used in the statute, is evident from the *second* section, which, in reference to the same subject-matter, adds the word "hereditaments,"—the words of that section being, "lands, tenements, or *hereditaments.*" The last word, says Coke, "is the largest word of all in that kind; for whatever may be inherited is an hereditament, be it corporeall or incorporeall, reall or personall, or mixt." Co. Lit. 6 *a.*

We know not upon what pretence a court of law can hold,

against such a statute, a parol conveyance of a perpetual ease-
ment in land good, because a consideration therefor has passed
from the grantee to the grantor; or, to use the language of the
common law improperly in application to such a conveyance,
that a *license* of this sort is irrevocable, when executed by ex-
penditures made upon the faith that the license will not be
revoked, even though it be added, unless such expenditures be
first repaid or tendered. Decisions to that effect may un-
doubtedly be found; but we may say of them, as was said by
Mr. Sugden, referring to the statute of frauds, of one of them,
(*Wood* v. *Lake,* Sayer, 3,) "that they are in the very teeth of
the statute." 1 Sugd. Vendors, 97, 7th Am. ed.

The more recent English cases of *Wood* v. *Ledbitter,* 13 Mees.
& Welsb. 838, in the court of exchequer (1845); of *Taplin* v.
*Florence,* 3 Eng. Law & Eq. R. 520, in the court of common
pleas (1851); and of *Ruffey* v. *Henderson,* 8 Eng. Law & Eq.
R. 305, in the queen's bench (1851), show that the law is well
settled in England in accordance with the views which we have
taken; and the opinion of the court, in *Wood* v. *Ledbitter,* de-
livered by Baron Alderson, quite exhausts the whole doctrine on
the subject of licenses. The current of authority in this country
sets with equal strength in the same direction, as may be seen
by referring, amongst others, to the cases of *Cook* v. *Stearns,*
11 Mass. 537; *Ruggles* v. *Lesure,* 24 Pick. 190; *Claflin* v. *Car-
penter,* 4 Metc. 583; *Nettleton* v. *Sikes,* 8 Metc. 54; and *Stevens*
v. *Stevens,* 11 Metc. 251, in Massachusetts;—to *Ex parte Co-
burn,* 1 Cowen, 570; *Miller* v. *Auburn R. R. Co.* 1 Hill, 61;
*Mumford* v. *Whitney,* 15 Wend. 380; and *Houghtailing* v.
*Houghtailing,* 5 Barb. Sup. Ct. R. 379, in New York;—to *Prince*
v. *Case,* 10 Conn. 375, in Connecticut;—to *Barnes* v. *Barnes,*
6 Verm. 388; and *Leland* v. *Gasset,* 17 Verm. 403, in Vermont;
—to *Den* v. *Baldwin,* 1 Zabriskie, 390, in New Jersey;—to
*Hays* v. *Richardson,* 1 Gill & Johns. 366, in Maryland;—to
*Clinton* v. *McKenzie,* 5 Strobh. 36, in South Carolina;—and to
*Woodward* v. *Seely,* 11 Ill. 157, in Illinois.

In Maine, New Hampshire, Pennsylvania, and Ohio, and
perhaps in some other states, the exploded doctrine of some of
the earlier English cases is still maintained at law upon equita-

ble grounds of estoppel, and part-performance of a parol contract, which certainly from their inherent justice would commend themselves to our attention as a court of law, had we not full powers as a court of equity to do justice in a proper case of this sort when applied to on that side of the court. In the recent case of *Weeden* v. *Babcock*, in this county, this court, sitting in equity, by way of perpetual injunction of a suit at law, specifically enforced a parol contract for the exchange of one private way for another, upon the equitable ground that the contract had been performed by the party applying, and, the way having been given up for the purpose of a railway track, and having been thus extinguished, because the applicant could not be placed in the situation in which he was before performance on his part. We do not doubt our ability to do full justice in like cases requiring our aid as a court of equity; and we deem it much safer that equities of this sort, often to be nicely adjusted, and sometimes demanding mature consideration, should be administered, through appropriate and flexible remedies, on that side of the court, than by the rougher and less discriminating intervention of a jury, and, scantily as they must be, in the unyielding forms of the common law.

The motion for a new trial in this case is in general terms, and if granted as asked, will open to the jury who are to try the cause all the issues which are made up in it. We were asked, however, by the applicant for a new trial, at the argument, inasmuch as a prescriptive right of way appurtenant to the farm of Abiel T. Browning in whose right the defendants justify, is pleaded, and has been found against them, to limit the new trial to the plea of license, and allow the verdict to stand as to the plea first named. This would be, in effect, to order a judgment to be entered up against the defendants, except so far as the mere question of the amount of damages is concerned. Now, although it is true that in granting new trials we are expressly empowered by statute to grant them under such restrictions and conditions as we may prescribe, (Dig. 1844, pp. 89, 90,) and it is not unusual, at least when they are granted for causes not involving any fault of the court, to impose proper conditions upon the applicant, in the way of costs, or even of

5 *

limiting the issues, or points under the general issue, to be opened to him in the new trial, (*Hutchinson* v. *Piper*, 4 Taunt. 555. *Thwaites* v. *Salisbury*, 7 Bingh. 437. *Baxter* v. *Nurse*, 6 Mann. & Grang. 940–942. *Winn* v. *Columbian Ins Co.* 12 Pick. 287, 288. *Robbins* v. *Townsend*, 20 Pick. 351. *Allen* v. *Mapes*, 20 Wend. 633, 634,) or. to grant them, unless the other party releases an excess of damages, or does some other justice in the cause, and so to impose a condition upon him, if he would prevent the new trial, (*Stephenson et al* v. *Mansony*, 4 Ala. 317, 318,) yet where, as in this case, the ground upon which the new trial is granted is an error of the court, it, at least, is not customary to impose any conditions upon the applicant, unless indeed, the court has acquired a right so to do by his previous consent. *Baxter* v. *Nurse*, sup. *Tuttle* v. *Gates*, 11 Shepley's R. 395, 397, 398 ; but see *Robbins* v. *Townsend*, sup.

We are not aware, however, of a practice anywhere, which authorizes the court to fix any terms whatever upon the party against whom the application is made, unless by way of an alternative, which he must accept or endure the new trial. Certainly it was never known that the party applying could have the issues found against him opened, whilst those in his favor were to stand against his adversary, who asked no indulgence and received none in return from the court, when it was employed merely in correcting its own error. At all events, no such practice has been known in this state, and this is not a case which appeals to our discretion to introduce it. The plaintiff has thus far disclosed no equities which aid him in obtaining from us advantages in his pursuit of the defendants. He stands upon the strict law, to which he is entitled, and we are not disposed to abridge the chances of the defendants in successfully resisting this action upon any of the issues which the record as originally made up opens to them. A new trial generally is therefore awarded.