**AUMAVAE on behalf of Aumavae Family, Leone, Plaintiff**

**v.**

**TUITELE (Magauli) of Leone, Defendant**

# No. 8-1958

# High Court of American Samoa

### Civil Jurisdiction, Trial Division

[Land: "Malaetele" and "Fagaalofa" in Leone]

# May 30, 1958

Heard at Fagatogo on April 22, 1958 before MORROW, *Chief Judge,* and APE and TAUALA, *Associate Judges.*

Tusi Faiivae and Sauitufuga, counsel for the plaintiff.

Atofau, counsel for the defendant.

OPINION OF THE COURT

MORROW, *Chief Judge.*

Aumavae acting in behalf of the Aumavae Family instituted an action to evict Tuitele from certain land in the village of Leone, claiming that such land was the communal land of the Aumavae Family, that he (Aumavae) gave permission to Tuitele to enter upon and use such land about 1940 or 1941, that Tuitele entered, put up houses and put in plantations on the land, that sometime in March 1958 he notified Tuitele to surrender possession of such land to him and that Tuitele has failed and refused to do so.

Tuitele claims that part of the land is known as Malaetele; that Malaetele is Tuitele communal property, having been occupied and used by the Tuitele people since a long time before the establishment of the Government in 1900; that the other part of the land is a part of the land Fagaalofa; that such part was Faiivae land and that it was given to Tuitele about 1941 or 1942 by Faiivae and Fao Vave.

It is undisputed that Tuitele built a large guest house on the land, the ownership of which is in dispute, about 1940 or 1941; that the guest house burned down in 1951 and that Tuitele has recently rebuilt most of it on the foundation of the house that was burned; that after the guest house was burned Tuitele built a sleeping house on another part of the land for himself and family and also a second sleeping house now occupied by Tapili, a member of the Tuitele Family. It is also undisputed that this second sleeping house has been rebuilt twice. It is also undisputed that Tuitele has had possession of and actually occupied all of the land in dispute for at least 16 years. He has planted

coconuts on it and also some breadfruit, this without objection by the Aumavae people. The coconut trees are bearing and from their appearance must have been planted at least 12 to 15 years ago. It is also undisputed that Tuitele put up the original guest house (the one burned down) in 1941 or 1942 without objection by the Aumavae people. Aumavae claims that he did not object to the construction of the two sleeping houses because he was in the hospital and did not know about it. However, it is Samoan custom for family members to visit with their sick matai and we think he must have been fully informed by his family members. It is incredible to think he did not know about the two houses being built.

Aumavae testified that the Aumavae people had had plantations on the disputed tract since before the Government was established in 1900, that it was Aumavae land according to family tradition, and that he (Aumavae) gave Tuitele oral permission to occupy the land shortly before the guest house was built about 1941 or 1942; that such oral permission was given in the presence of witness Aitogi. Tuitele denied that any such permission was given. Aitogi testified that no such permission was given by Aumavae to Tuitele in her presence.

Aumavae also testified that the Aumavae title originated in Iliili. However, he did say that there had been "about 10 Aumavaes in Leone so far." Aumavae is a member of the Faiivae Family. The fact is (and it is undisputed) that the father of the present Faiivae held the title Aumavae as did the father of Fao Vave.

As stated by Chief Justice Wyche in the case of *Levale et al. v. Toaga*, No. 26A-1945 (H.C. of Am. S.), "The question of title to real estate in American Samoa is always a difficult one to solve for the reason that in most cases there is no recorded title to, nor description of property. Title to real estate is generally proved by family tradition." There

is no recorded title nor description of the property in this case. Nevertheless, despite the difficulty, we must solve the problem using other evidence.

■■ We have a case where the defendant has admittedly been in the undisturbed possession of land for at least 16 years. "Where title to *land* becomes material, the fact of present possession alone may serve to create a presumption of ownership; the emphasis being on the occupation, or appearance of ownership, and not on documentary sources of claim; . . ." IX Wigmore on Evidence (3rd Ed.) Sec. 2515. "It is an ancient principle that where a person is shown to be in the possession of property, such possession is presumed to be rightful. *Potior est conditio possidentis* (better is the condition of the possessor)." Jones on Evidence (4th Ed.), Sec. 74. "A presumption of ownership or title is derived from the possession of real property, the probative weight or force thereof being dependent upon the duration of the possessor's tenure." Id. Sec. 75. This presumption may be rebutted, however, except in cases where the possession has continued for at least 20 years under circumstances constituting adverse possession. In American Samoa the very fact that Aumavae did not object to the planting of the coconuts (and he testified that he did not) is circumstantial evidence that the part of the land in dispute on which they were planted was not Aumavae land. A Samoan almost invariably objects to another's planting permanent crops on his land even though the other is occupying such land with the owner's permission. The fact that there was no objection to the erection of the two sleeping houses is another piece of circumstantial evidence to the same effect.

There is considerable conflict in the evidence but it is our conclusion that the weight of the evidence is to the effect that the part of the disputed tract on which the guest house was built and Tuitele's present sleeping house stands is a

344

part of the land known as Malaetele and that it has been Tuitele family land since prior to the establishment of the Government in 1900 and we so find. The testimony of both Tuitele and Toomata, a former district governor, was that Malaetele had been used for plantation purposes by the Tuitele people since before the establishment of the Government.

We think that the evidence also preponderates in favor of the view that the remainder of the disputed tract, the part on which Tapili's house stands, is a part of the land Fagaalofa which was given by Faiivae and Fao Vave to Tuitele some 16 or 17 years ago, and we so find. The Aumavae title originated in Iliili as Aumavae testified. Aumavae is a member of the Faiivae Family. As we have said it is undisputed that the father of the present Faiivae and also the father of Fao Vave held the Aumavae title. We believe also from the evidence that the Aumavae people did occupy the part of Fagaalofa given by Faiivae and Fao Vave to Tuitele when the gift was made. We believe from the evidence that Aumavae, a member of the Faiivae Family, consented to and approved the gift. Aumavae testified that both he and Faiivae are descendants of Matthew Hunkin and that he (Aumavae) had his house on Matthew Hunkin land.

However, a matai in control of communal family land cannot give away or otherwise alienate such land without approval by the Governor. There was no approval by the Governor of the oral transfer of part of Fagaalofa to Tuitele. Such attempted gift did not, therefore, operate to transfer the ownership to Tuitele. Sec. 1282 of the A. S. Code. Nevertheless, the entry by Tuitele upon the part of Fagaalofa attempted to be given to him by Faiivae and Fao Vave was with the permission, approval, and consent of Aumavae whose family members occupied such land prior to the attempted gift. Under these circumstances, while there

345

was no transfer of ownership or estate in the land to Tuitele, we think nevertheless that he did acquire a license to enter upon the land, occupy it, and put in plantations and build houses on it.

The question then arises whether such license, although not an estate in land, may, nevertheless, be revoked. "In many jurisdictions where a licensee has entered under a parol license and has expended money or its equivalent in labor, it becomes irrevocable, and the licensee acquires a right of entry on the lands of the licensor for the purpose of maintaining his structures, or, in general, his rights under his license, and the license will continue for so long a time as the nature of it calls for." 33 Am.Jur. 408 citing *Chesapeake & Ohio Canal Co. v. Ray*, 101 U.S. 522, 25 L.ed. 792 and many other cases. On the other hand "The courts of many of the states uphold the general rule that a parol license to do an act on the land of the licensor, while it justifies anything done by the licensee before revocation, is nevertheless revocable at the option of the licensor, and this although the intention was to confer a continuing right, and money had been expended by the licensee on the faith of the license." 33 Am.Jur. 410 citing *Hicks Bros. v. Swift Creek Coal Co.*, 133 Alabama 411, 57 L.R.A. 720 and other cases. And "In some cases, the view is taken that under the rule that a license is revocable although expenditures on the faith of it have been made, the licensee is not entitled to compensation for the cost of such expenditures or improvements upon the land of the licensor (citing *Foster v. Browning*, 4 R.I. 47). A majority of cases, however, support the contrary view. According to these cases, if a license is revocable, the licensee, as between the parties, upon the revocation by the licensor of a license for the use of the latter's real property, is entitled to compensation or reimbursement for expenditures made by the former upon the property on the faith of the license (citing *Wynn v.*

346

*Garland,* 19 Ark. 23 and many other cases)." 33 Am.Jur. 411.

The Courts of American Samoa have been faced with this same problem before. Where a man has entered upon land under a parol license and expended money or labor in reliance thereon, we have held in a number of cases that, even though the parol license is revoked, as we hold it may be, he may nevertheless retain possession of the property and make use of it in accordance with the terms of the license until such time as the value of the use of the property is equal to the value of the expenditures less the value (after they are torn down) of any building which he may have erected on the land and can remove from it when he leaves it. See *Heirs of Lemeanai Family v. Iosia of Tafuna,* No. 30-1953 (H.C. of Am. S.) and *T. Magalei et al. v. R. S. Tago Sianava,* No. 23-1955 (H.C. of Am. S.). We have permitted retention of the property for a limited time for the very practical reason that normally a money judgment for the expenditures less the deduction would, as a matter of fact, be of no substantial value.

In this case Tuitele had put up a house on the part of Fagaalofa attempted to be given to him. He has also put in some plantations on it. The house is occupied by Tapili, a Tuitele Family member. We think that Tuitele will be compensated for his labor and expense in erecting the house and putting in the plantations if he is permitted to occupy and use such part for $2\frac{1}{2}$ years from the date of the order herein, i.e. until Nov. 30, 1960, having removed Tapili's house on or before that date and leaving the plantations on such part in an unharmed condition.

### ORDER

In accordance with the foregoing opinion it is ORDERED that the plaintiff's petition be and it is hereby dismissed with respect to that part of the disputed tract which

the Court has found to be Malaetele (on which part is the location of the guest house burned down in 1951 and partially rebuilt and also the present sleeping house of Tuitele); and it is further ORDERED that Tuitele shall have the right to continue to occupy, possess, and use for dwelling and plantation purposes that part of Fagaalofa on which Tapili's house is (i.e. the part which the Court has found to have been the subject matter of the attempted gift by Faiivae and Fao Vave to Tuitele) until Nov. 30, 1960 at which time Tuitele shall have the right, if he has not done so before, to remove the house now occupied by Tapili from such part of Fagaalofa, leaving any plantations he may have thereon at that time in an unharmed condition. And Tuitele is hereby ORDERED to vacate such part of Fagaalofa on or before Nov. 30, 1960.

We think that under the circumstances of this case the costs should be divided equally between the parties. Accordingly costs in the sum of $12.50 are hereby assessed against Aumavae and a like sum against Tuitele. Costs are to be paid within 30 days.