## HAAS et al. v. BRANNON.

No. 13686—Opinion Filed, April 29, 1924.

**1. Easements—Basis of Way of Necessity.**

A way of necessity is based upon the presumption of a grant, and will never exist if the two tracts of land are not shown at some time in the past to have belonged to one and the same person.

**2. Same—Mere Convenience not Sufficient Basis.**

No application of a grant of a right of way can arise from proof that the land granted cannot be conveniently occupied without it; its foundation rests in necessity, not in convenience. A party cannot have a way of necessity through the land of another when the necessary way to the highway can be obtained through his own land, however convenient and useful another might be.

**3. Same—Implied Grants not Favored.**

It may be said in general that the tendency of the courts is to discourage implied grants of easements, since the obvious result, especially in the urban communities, is to fetter estates and retard buildings and improvements, and is in violation of the policy of the recording acts.

**4. Licenses—Distinguished from Easement.**

License is an authority to do a particular act or series of acts upon another's land without possessing an estate therein. It is distinguished from an easement which implies an interest in the land to be affected.

**5. Same—Revocation of License.**

It is an ancient and well-settled doctrine of the common law that a mere license, whether by deed or parol, is revocable at pleasure, unless coupled with an interest or grant.

**6. Party Walls—Rights in Space Between Party Wall and Street.**

The land lying in front of a party wall, between that and the line of the street, is to be exclusively enjoyed by its owners, free from any burden or easement growing out of a simple party wall agreement, or created by statute, and is to be occupied by the adjoining owners according to the boundary lines of their lots for the construction of their fronts.

(Syllabus by Thompson, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Custer County; Thomas A. Edwards, Judge.

Action by W. I. Brannon against Leo Haas and I. G. Hanshaw to enjoin them from changing the front of a building. Judgment for plaintiff. Defendants bring error. Reversed.

A. J. Welch, for plaintiffs in error.

Meacham & Meacham, for defendant in error.

Opinion by THOMPSON, C. This action was commenced in the district court of Custer county, Okla., by W. I. Brannon, defendant in error, plaintiff below, against Leo Haas and I. G. Hanshaw, plaintiffs in error, defendants below, to enjoin them from changing the front of a building located in lots 21 and 22, in block 37, in the town of Clinton, Okla.

The parties will be referred to as plaintiff and defendants, as they appeared in the lower court.

The petition alleges that plaintiff was the owner of lot 21 and that defendant Leo Haas was the owner of lot 22, block 37, in the town of Clinton, Okla., upon which a two story brick building was erected, having a joint party wall and a joint stairway leading to the upper story, with a lobby 16x7 feet extending back from the store line of the building, one-half of which belonged to each of the property owners; that said building was built about ten years before the bringing of this action; that the defendants were about to tear down and remove a column, which supported a large span of the foundation of the upper story of the building and were threatening and making preparations to construct a column in front of the stairway and in said lobby; that the tearing down of said column would weaken said building, and the erection of said other column would obstruct the lobby and stairway and lessen the rental value of

the upper story of plaintiff's building, and would be an obstacle to plaintiff in his business on the lower floor, and would give the building an irregular appearance and would change the symmetry and architecture of the same; and prayed for a permanent injunction restraining the defendants from tearing down and destroying the column and from constructing and building the proposed column.

A temporary injunction was granted by the county judge of Custer county, in the absence of the district judge from said county.

The defendants filed motion to vacate the temporary injunction, and, thereafter, Thomas A. Edwards, the district judge of Custer county, denied said motion and made certain findings, which are as follows:

"First. That plaintiff's allegations and evidence as to damage to the building by destroying its architectural beauty and symmetry are not sufficient to justify an injunction or temporary restraining order.

"Second. That plaintiff's allegations and evidence as to damage to his building by weakening, cracking and destroying the upper structure are not sufficient to justify the relief prayed for in the petition.

"Third. But the court finds from the evidence that the plaintiff has an easement over that part of the lobby in front of defendant's store, and that defendant has no right to enclose said portion of said lobby which is admitted in the answer he seeks to enclose by the rebuilding of the front of his store as in the answer admitted without the consent of plaintiff.

"Wherefore, it is ordered by the court that said motion be overruled, and that said restraining order be and remain in force until this cause is regularly heard in open court of Arapaho at the next term. To which defendant saves exceptions."

Defendants answered by way of general denial, and for further answer stated that they denied they were about to tear down or destroy any supporting column, or that they intended to have erected any kind of a column in front of the stairway, but only proposed to remove the column, which was wholly upon the property of the defendant Haas, to another point on the property of said defendant, as shown by plat attached, and to erect two additional columns at two other points shown by said plat to form a center entrance to his business room on the lower floor, and that said remodeling made the front beams supporting the upper story of the building stronger rather than weaker, and that said change would not damage the plaintiff's property in any way or obstruct the use of plaintiff's property

in any manner; that the plaintiff was the owner of lot 21 and defendant Haas was the owner of lot 22, and that their respective store buildings were erected on the said lots in 1909 at the same time; that the party wall is half on one side and half on the other of a line being the center of said wall; that there is an open lobby in front of said building 16 feet long, running with the sidewalk, extending six feet deep into the building and there is a stairway four and a half feet wide leading to the second story of each building, which stairway was owned and maintained jointly by the owner of each building; said lobby consists of equal space taken from said store buildings, the stairway entrance being in the center of the lobby; that the owner was the owner of said lot 21 when the buildings were erected thereon, but the defendant Haas became the owner of lot 22 by successive transfers in 1913; that there had never been a common ownership of the two lots since they were conveyed by the town-site company, at which time there were no improvements thereon; that there never had been any written agreement between any of the owners of the property, either as to the party wall, the stairway, or the lobby; that the improvements the defendants proposed to make would in no way hinder the plaintiff or obstruct his use of said stairway or the entrance to his building, as there would still remain an unobstructed lobby and entrance 11 feet long by six feet wide, extending in front of the whole width of said stairway, and the front portion of plaintiff's store, the portion sought to be enclosed, is in no way necessary to plaintiff's free and complete use of his said store and the common stairway; that plaintiff had no easement or right of way by grant, implication, or prescription over that portion of said lobby sought to be enclosed; that if plaintiff ever had a right of way or easement over said portion of said lobby in front of the defendant's store, he is now estopped to complain of said actions of defendant for the reason that he stood by, without objection in any way, and with full knowledge of the changes that defendant proposed to make and was making and personally observed the changes being made by defendant's workmen for a term of one week and until the front of the store of defendant Haas was torn away and new material ordered, and remained silent at an irreparable damage to said defendant in the sum of $200 and that to replace the front torn away would cost an additional amount of $200 and that by his standing by and acquiescing in said changes that plaintiff consented to the

change and was now estopped to complain at the actions of the defendants, and prayed that the temporary injunction be vacated and the action dismissed at plaintiff's cost and for damages.

The cause was tried upon an agreed statement of facts, which is as follows:

"1. Said lots 21 and 22 face south on Frisco avenue, in the center of the business section of the city of Clinton, and lot 22 lies east of lot 21. Both east and west for more than a block business houses adjoin said property and face on Frisco avenue, with a sidewalk 14 feet wide between the front of the buildings and the curb line of the street, the street being paved with asphalt paving.

"2. There has never been a common owner of said two lots since the title was in the town site, and each lot was conveyed by the town-site company to separate grantees long before any improvements were placed thereon, and the title to the lots passed by the several separate transfers until the plaintiff and defendant became the owner of them, respectively.

"3. There was never any party wall contract on these two lots placed of record, but in 1909 or 1910 the present building which covers both lots was erected, with a center stairway upon the line between the two lots, and this stairway has so remained and been used by the owners of each of the lots to this time. Plaintiff was the owner of his lot at the time the building was erected but defendant did not become the owner of the other lot until three years thereafter.

"4. Said building was erected on both lots at the same time but by the separate owners of the two lots who owned them in severalty. There is no contract of record with reference to the erection of the building or any other character other than the ordinary deeds.

"5. Notwithstanding the double building has a uniform front and was named the 'Kentucky Building,' the separate lots have been owned by different persons, and in each and all conveyances in the chain of title each lot is described simply by lot and block, with improvements thereon, appurtenances etc., and without any reference whatever to the other lot or building thereon.

"6. There is a lobby 7 feet deep by 16 feet long in front of the center of said building, one-half of which cuts out of the building on each of the lots, and a center stairway 4 1-2 feet wide leading up from the center of the lobby for the use of the second floor of both buildings. The front door entrance to each building adjoins the stairway, from the lobby."

At the close of the case the defendants moved for judgment on the ground that the entire record justified a judgment for the defendants.

Reply was filed out of time over defendant's objections, by way of general denial.

The court overruled the defendant's motion for judgment and filed its findings of fact and conclusions of law, which are as follows:

"Findings of Fact.

"1. The ownership of the two lots, the erection of the original building and the repairs sought to be made on the Haas building are correctly set out in the answer of the defendants and shown by the plat attached to said answer, and the agreed statement of facts.

"2. The building was erected on the two lots about 1910, since which there has been no change or alteration in it, and Haas became the owner of the east lot about 1913.

"3. There was never any contract or agreement between plaintiff and defendant Haas, or between any of their former owners of said lots in the chain of title, prohibiting either party using his respective lot and building, or repairing or improving the same, as he may desire, other than the erection and existence of the building as it was erected and stood.

"4. That there is a party wall with a jointly owned stairway between the two buildings, the property line between the two lots being directly under the center of said wall and stairway. But this wall and stairway extends from rear to the landing or bottom of the stairway at the north side of lobby. That said lobby is sixteen feet long and four and one-half feet wide, that is, extending from the outer edge of the stairway on either side of the building a depth of six feet and forming a landing or entrance to said stairway.

"5. That the proposed change would alter the appearance and architectural symmetry of the building.

"6. That the proposed alterations, if done with a very high degree of care would not necessarily weaken the building but that if not done with exceeding care and skill or if any settling of the column sustaining the weight should result the change would weaken the building.

"7. That the proposed change by the defendant would cut off that part of the lobby extending from the east line of the stairway into the building of the defendant Haas, taking from said lobby a space 4 1-2x6 feet in size and leaving as a lobby remaining that portion of the said lobby immediately in front of the stairway and six feet extending into plaintiff's building, and that the column as proposed to be erected in place of the one sought to be removed, ex-

tending an inch or more west of the line of the east wall of the stairway, that is to say the remaining lobby would take from the plaintiff's store a space 41-2x6 feet and nothing from the property of the defendant.

"Conclusions of Law.

"1. The court concludes as a matter of law that the building being erected as a unity and with a partywall and stairway upon the line, that an easement or license in the stairway and approach thereto is created, which is irrevocable at the option of one party against the will of the other.

"2. The court concludes as a matter of law that the purchase of the lot by the defendant, with the building thereon as constructed, was notice to the defendant of such easement or license.

"3. The court concludes as a matter of law that it is inequitable for the defendant to appropriate that part of the lobby east of the east line of the stairway, as thereby an additional burden is placed on the remainder of the lobby and an additional burden placed on the plaintiff's building west of the west line of the stairway.

"The court concludes as a matter of law that the question at issue is one of law and equity and that the proposed change may be restrained by injunction and that the plaintiff is entitled to enjoin the change sought to be made."

The defendants filed exceptions to the first, second, and third conclusions of law for the reasons that they were not supported or sustained by the findings of fact, and do not state the law of the case, but are contrary to both the findings of fact and law of the case, and moved the court for judgment in their favor, notwithstanding the said conclusions of law.

A motion for new trial was filed, heard, and overruled. Defendants excepted and the court entered its final judgment, permanently enjoining them from making the changes in the front of the store building or placing any columns or obstructions in front of said store, and assessing the costs against the defendants. From said judgment the defendants appeal to this court for review.

In their brief, the attorneys set out three specifications of error, which are as follows:

"1. The petition did not state a cause of action.

"2. The trial court's judgment is the result of misapplication of the law to the admitted facts of this case.

"3. The sixth paragraph of the answer set forth a new and complete defense, which was never denied, or waived, and it was error to overrule defendant's motion for judgment on the pleadings."

On examination of the record, we find that the court upon hearing of motion of defendants to vacate the temporary restraining order, issued by the county judge, found that the remodeling of the front of defendant's store would not damage the building by destroying its architectural beauty and symmetry, and would not weaken and crack and destroy the upper structure, and the claims of the plaintiff in regard thereto did not justify an injunction or a temporary restraining order, but found that the plaintiff had an easement over that part of the lobby in front of the defendant's store and defendant had no right to enclose said portion of the lobby in front of his store without the consent of the plaintiff. While this finding is not controlling, yet it is very persuasive, and, in the final judgment, as contained in the findings of fact upon this proposition, the court found that the proposed change would alter the appearance and the architectural symmetry of the building, and that if the proposed alteration were done with a very high degree of care it would not necesarily weaken the building, but if not done with exceeding care and skill, or if there were any settlings of the column sustaining the weight of the upper story that the result would be to weaken the building, which is practically the same finding as contained in the former finding of the court and taken together did not conclude that such changes constituted sufficient grounds for forbidding the defendant, Haas, to make the alteration proposed.

In the final finding of the court, it also appears that the court found as a matter of fact that the ownership of the two lots and the erection of the original building and the repairs sought to be made on the Haas Building were correctly set out in the answer; that said building was erected about 1910 and no changes had been made thereafter; that there never was any contract between the owners of the two lots at any time, which prohibited either party using his respective lot and building or repairing and improving the same as he desired, other than the erection and existence of the original building; that the proposed change would cut off that part of the lobby only in front of the Haas building not interfering in any way with the stairway. The two lots had never been owned by any one person but had been owned separately by different parties from the time the same was platted and sold, and upon these findings of fact the court found as conclusions of law that the building was erected as a unity, with a partywall and stairway upon

the line and "that an easement or license in the stairway and approach thereto was created, which is irrevocable at the option of one party against the will of the other," and that the defendant Haas purchased the lot with the building thereon; thatl the same was notice to the defendant of such easement or license, and that the defendant Haas should not be permitted as a matter of equity to enclose the part of the lobby on his side of the stairway over the two lots, as it placed an additional burden on plaintiff's part (f the lobby, and made the injunction permanent. As a basis for such judgment theref.r and as a sole ground for granting the permanent injunction the court found that the plaintiff had "a license or an easement," in that part of the lobby on the property of the defendant, Haas.

The attorney for defendants, in his brief, contends that this conclusion of law is the result of the misapplication of law to the admitted facts in the case. The change sought to be made by defendant Haas contemplated the placing of three pillars under the place, supporting the second story, one pillar being nearer the center of the building than as at present constructed, and the placing of such pillars would not, in any manner, obstruct the entrance to plaintiff's store building nor obstruct the approach to the common stairway, but enclosed that part of the lobby on the property owned by defendant Haas next to the stairway. In oul view of the case the defendant Haas had a perfect right to exercise dominion over his property as long as his use thereof did not, in any substantial way, damage the plaintiff. In the absence of any contract existing between the parties of any kind or character, that this lobby should remain perpetually as it stood when the building was erected and completed and the defendant had no prescriptive right to the open lobby, the only possible claim that could be made as a basis for the decision that plaintiff had an easement therein would be by implication. 9 R. C. L. 757, sets out the necessary requisites to create an easement by implication and is as follows:

"Three things are regarded as essential to create an easement by implication on the severance of the unity of ownership in an estate: First, a separation of the title: second, that, before the separation takes place, the use, which gives rise to easement, shall have been so long continued and so obvious or manifest as to show that it was meant to be permanent; and, third, that the easement shall be necessary to the beneficial enjoyment of the land granted or retained. To these another essential is sometimes added that the servitude shall be continuous and self-acting, as distinguished from discontinuous and used only from time to time. The separation of title implies, of course, unity of ownership at some former time as of the foundation of the right. The easement derives its origin from a grant, and cannot legally exist where neither the party claiming it or the owner of the land over which it is claimed, nor anyone under whom they, are either of them, claim, was ever siezed of both tracts of land."

14 Cyc. 1168, is to the same effect.

The terms "way of necessity" and "easement by implication" are synonymous, and necessity is the very gist of implied right, and this rule seems to be universal as defined in the language found in 19 C. J., section 114, as follows:

"Ways of necessity cannot be founded upon an express grant * * * and cannot exist where there was never any unity of ownership of the alleged dominant and servient estate, for no one can have a way of necessity over the lands of a stranger. Necessity alone without reference to any relations between the respective owners of the land is not sufficient to create this right."

This court, in the case of Dudley v. Meggs, 54 Okla. 65, 153 Pac. 1121, adopts the same rule, as follows:

"Easements—Way of Necessity—Ownership of Land. A way of necessity is based upon the presumption of a grant, and will never exist if the two tracts of land are not shown at some time in the past to have belonged to one and the same person."

Inconvenience to the plaintiff in the use of his property, even if such were the case, and even if the requirement of unity of title had existed, would not create for him the easement given by the court's judgment, for the law is as stated in 19 C. J., sec. 115, under the head of Easements, that:

"No implication of a grant of a right of way can arise from proof that the land granted cannot be conveniently occupied without it; its foundation rests in necessity, not in convenience. A party cannot have a way of necessity through the land of another when the necessary way to the highway can be obtained through his own land, however convenient and useful another way might be."

The above principles of law, from the authors and decisions referred to, are directly applicable to this case and as the law is jealous of a claim to an easement and the burden is upon the party asserting such a claim to prove it clearly, we are of the opinion that no easement existed in favor of the plaintiff in this case, and that he was not justified in his interference with the exercise of his right of dominion over the property by the defendant in this action.

If such a hard and fast rule were to be permitted, as is laid down by the trial judge in this case, the building of modern cities and the improvement of old buildings by erecting modern and attractive fronts would be an impossibility, and, as said in 9 R. C. L. 754:

"It may be said in general that the tendency of the courts is to discourage implied grants of easements, since the obvious result, especially in urban communities, is to fetter estates and retard buildings and improvements, and is in violation of the policy of the recording acts."

Modern improvements would cease.

We think the more liberal rule, as pronounced by the Supreme Court of Wisconsin, in the case of Miller v. Hoeschler, 126 Wis. 263, 105 N. W. 790, should obtain, in which it was decided as follows:

"Whatever may be true in older communities, it would be difficult to find justification for any such presumption in a new and developing country, and especially in the cities. There, instead of permanence, change is to be expected—is indeed essential to prosperity. As the city grows, large grounds, appurtenant to residences must be cut up to supply more residences near to business, and it must be expected that land will be occupied by the apartment building covering all the ground of the owner. The cistern, the outhouse, the cesspool, and the private drain must disappear in deference to the public water works and sewer; the terrace and the garden, to the need for more complete occupancy. Hence there can be but slight reason to suppose that upon the sale of that part of an entire tract on which stands a house, it is intended permanently to subject other parts of the tract to such obsolescent uses, although the owner of the whole had so devoted them. This is even more obvious in the business parts of a city, where the row of ancient barracks with their exterior appurtenances must give way to modern business blocks occupying to the full limits of the owner's land."

To like effect are the cases of Bixby v. Cravens et al., 57 Okla. 119, 156 Pac. 1184; Giller v. West, 162 Ind. 20, 69 N. E. 548, at page 549.

As to the rights of the parties to the land in front of the property to the street line it has been very clearly defined in 20 R. C. L. 1094, which is as follows:

"The land lying in front of a party wall, between that and the line of the street, is to be exclusively enjoyed by its owners, free from any burden or easement growing out of a simple party wall agreement, or created by statute, and is to be occupied by the adjoining owners according to the boundary lines of their lots for the construction of their fronts."

The court uses the terms "easement" or "license." The two terms are clearly distinguishable. In the instant case the lobby was not exclusive, and the fact that this lobby was there when the defendant Haas bought the property is urged as notice to him, but such possession was not in Brannon alone, and not adverse, and where, as in this case, both were using it in common and it was not such adverse possession as would serve as notice of a claim or right for the reason that the same is not inconsistent with the license from the other. The license, as we term it, in the instant case, was not coupled with an estate or interest in the lot, or property, owned by Haas, and Black's Law Dictionary defines license as follows:

"An authority to do a particular act or series of acts upon another's land without possessing an estate therein. * * * It is distinguished from an easement which implies an interest in the land to be affected."

If the rights of plaintiff were a mere license, 17 R. C. L. 576, says:

"It is an ancient and well-settled doctrine of the common law that a mere license, whether by deed or parol, is revocable at pleasure, unless coupled with an interest or grant."

Under the authorities a license is a personal, revocable, and unassignable privilege, conferred either by writing or parol to do one or more acts on lands without possessing any interest therein.

In the light of the above conclusions it is unnecessary to pass on other assignments.

Under the above authorities, it is our opinion that the court committed reversible error in holding that the plaintiff had the right to enjoin the defendant, under either an easement or license, under the facts in this case and under the law applicable thereto, from making the improvements sought to be made by him in this case. We are, therefore, of the opinion that the decision of the lower court should be and is hereby reversed.

By the Court: It is so ordered.