GORMAN v. OVERMYER et ux.

No. 32080. April 29, 1947.

Rehearing Denied July 15, 1947.

Second Petition for Rehearing Denied Oct. 28, 1947.

*190 P. 2d 447.*

A. L. Harbison, of Tulsa, for plaintiff in error.

Eldon J. Dick and L. E. Bellamy, both of Tulsa, for defendants in error.

OSBORN, J. This action was brought on January 10, 1944, by the plaintiff, James F. Gorman, against the defendants, George J. Overmyer and Brenda E. Overmyer, husband and wife, to enjoin the defendants, who were the record owners of lot 16, block 6, in Sunset Terrace addition to Tulsa, from using a concrete driveway located partly upon lot 16 and partly upon lot 17, which joined lot 16 on the south, and to collect a reasonable rental for the use of said driveway by defendants. Plaintiff was the owner of the record title to lot 17. Defendants in their answer and cross-petition denied that plaintiff was the real owner of lot 17, and alleged that Bertha Florence Sabin and M. R. Sabin were the equitable owners of the property. They further alleged that the driveway was constructed by the Sabins at a time when they were the equitable owners of lots 16 and 17 under a contract with Sunset Gardens Company, which platted and placed Sunset Terrace upon the market, and that upon the division of the title to the two lots an implied perpetual easement to use said driveway vested in the purchasers of lot 16. They further alleged that the use of said driveway was necessary for ingress and egress to and from the three-car garage on the rear of lot 16, and asked that the plaintiff, his representatives or agents, be enjoined from interfering with the free use thereof by defendants. They also moved to make the Sabins parties to the action, but apparently no order to that effect was made by the trial court.

Plaintiff, in his reply, realleged his ownership of lot 17, denied that the driveway was necessary to the owners of lot 16, and alleged that at the time

the mortgage was made by the Sabins, the then owners of lot 16, to the Home Owners Loan Corporation, from whom defendants acquired their title, the driveway was not in existence.

The case was tried as one of equitable cognizance. The trial court found that the driveway was established prior to 1935, and at a time when both lots 16 and 17 were owned by the same persons; that the driveway was reasonably necessary to the owners of lot 16, and that it would be impracticable and expensive to construct a driveway upon lot 16, and that such construction would mar the beauty of the architecture and improvements thereon; that the driveway was constructed apparently for the purpose of serving residences to be erected on both lots 16 and 17, and that the owner of each lot had an implied easement upon the land of the other owner included in said driveway. The court denied the prayer of plaintiff's petition; adjudged that the defendants were entitled to use the driveway as a perpetual easement and right of way, and required the plaintiff to pay all costs.

Plaintiff, on appeal, contends that the judgment of the trial court is against the clear weight of the evidence, and is contrary both to the law and to the evidence.

From the evidence it reasonably appears that Sunset Terrace addition was platted and placed upon the market by Sunset Gardens Company at some time prior to 1925, and that during the year 1925 Bertha Florence Sabin, who was also known as Mrs. Milton Roe Sabin, contracted with Sunset Gardens Company for the purchase of both lots 16 and 17, and other lots in Sunset Terrace addition. At some time during or about the year 1930, Mrs. Sabin and her husband began the construction of a large brick residence upon lot 16, which was apparently completed during the year 1935. While the contract of purchase between Mrs. Sabin and the Sunset Gar-

dens Company was never reduced to writing so far as the record shows, the record contains a letter from Mrs. Sabin to Mr. A. L. Farmer of Sunset Gardens Company, dated March 16, 1927, in which she advised that she had been unable to make all payments due on lots 16, 17, 18, and 19 in Sunset Terrace addition, and states that she knows Mr. Sabin will construct houses on the lots in keeping with other houses built by him, and that as soon as he could sell the home which he was then completing they would be in position to take care of the above designated lots. There also appears in the record a letter from Bertha Florence Sabin to Sunset Gardens Company, dated October 10, 1935, authorizing and directing it to issue a deed to lots 17 and 18, block 6, and lots 12, block 7, Sunset Terrace addition, to W. E. Jones, and containing the following statement: ". . . and by the issuance of such deed you have complied with your agreement dated October 10, 1935, relative to the delivering of title to me, said W. E. Jones accepting said property at my request and for my benefit."

Mrs. Sabin testified at the trial of the case that in all her transactions as to lot 17 she acted as the agent of her sister, Miriam Melton, who was the real owner of the property. Miriam Melton testified to the same effect. No reason for such agency is given by either witness, and Miriam Melton admitted that she had no deed, contract or other instrument of writing signed by Mrs. Sabin, or anyone else, showing that she had any right or equity in lot 17.

It appears that defendants acquired their title to lot 16 from Home Owners Loan Corporation, which foreclosed a mortgage made to it by Mrs. and Mr. Sabin, and bought in the property. Mrs. Sabin, in effect, admitted that in the foreclosure action she testified that she and her husband had a contract for the purchase of lot 17, and that they really paid for said lot but sold it and never got a deed; that they sold it to W. E. Jones; that she and her husband got the

loan from the Home Owners Loan Corporation and made the mortgage on lot 16 to secure the same on April 2, 1935; that the driveway was built after they sold lot 17 to Jones, but that they had an arrangement with Jones that she was buying back the property because she wanted that lot. While in the instant case she testified that the driveway was not built until after October 10, 1935, the date of the deed to Jones, a number of disinterested witnesses testified that it was constructed several years before that date; that it was completed about the time Mr. and Mrs. Sabin moved into the uncompleted house on lot 16, and was used by the Sabins while they were constructing the residence. Defendants also introduced in evidence an affidavit made by Mrs. Sabin on January 12, 1935, in which she stated that she purchased lot 16 by contract on or about November 17, 1925, and that she moved upon lot 16 in the fall of 1931, and occupied the same as her home and had continued to occupy the same as her homestead.

The driveway itself is some seven feet wide, three inches of the concrete being upon lot 16, and the remaining six feet nine inches being upon lot 17, for a distance of some 100 feet back from the front end of the lots, at which point it curves sharply onto lot 16 to the three-car garage on said lot. Concrete steps leading from the front porch of the residence on lot 16 extend to the edge of the driveway. An architect testifying for defendants stated that by tearing down the steps from the front porch, closing up a clubroom door; making some changes in windows in the rear of the residence; cutting down some trees and cutting away a portion of the slope in the front yard of lot 16, and building new steps in front of the house, it might be possible to construct a driveway between the residence on lot 16 and the south line of that lot, but that to do so would greatly mar the architecture of the house on lot 16, and impair its usefulness and desirability as a residence.

The record shows that Sunset Gardens Company deeded lot 17 to W. E. Jones on October 10, 1935; that on February 24, 1939, Jones deeded the property to one Harrison Williford, and that on July 30, 1941, Harrison Williford deeded the property to plaintiff. The evidence does not show what consideration, if any, was paid to Sunset Gardens Company by Jones when the deed was issued to him, nor is there any showing as to the consideration for the deed to Williford or the deed from Williford to plaintiff. Plaintiff did not appear at the trial of the case, but Mrs. Sabin testified that he resided in California, and that he was a friend of hers of long standing.

Plaintiff contends that the evidence affirmatively shows that there was no unity of title or ownership as to lot 16 and lot 17 at the time the concrete driveway was constructed, but that from the evidence it appears that permission to use the driveway was given to the Sabins, the owners of lot 16, by Miriam Melton, the sister of Mrs. Sabin, who they contend was the owner of lot 17.

The only evidence tending to prove that Miriam Melton was the owner of lot 17, and that Mrs. Sabin, in her dealings involving lot 17, acted as her agent, is that given by Miriam Melton and Mrs. Sabin. Their testimony is vague and, in some respects, contradictory. It is contradicted by the letters from Mrs. Sabin to Sunset Gardens Company herein above referred to, also by Mrs. Sabin's practical admission that at the trial of the action involving the foreclosure of the mortgage upon lot 16, she testified that she and her husband owned lot 17 although they did not have a deed. The trial court heard the witnesses testify and observed their demeanor upon the witness stand and apparently gave the testimony the weight to which he considered it entitled.

In some respects the situation in this case resembles that involved in Curry v. Southwall Corporation, 192 Okla. 590, 138 P. 2d 528, in which the general rule regarding the transfer of property subject to an easement by implication or quasi easement is set out. In that case Curry, although he denied ownership of the lot involved, exercised dominion over the lot, received a valuable consideration as to it, and executed a warranty deed conveying it. In the instant case Mrs. Sabin, who was apparently the owner of lot 17 and entitled to receive a conveyance thereof from Sunset Gardens Company, in writing authorized them to issue the deed to W. E. Jones, her nominee, for her benefit. Whether she received any consideration for the conveyance of lot 17 to Jones is not shown, neither does it conclusively appear whether plaintiff in the present action paid a valuable consideration for the lot and is the real owner thereof, or whether he holds it for the benefit of Mrs. Sabin.

We have carefully examined all the evidence in the record bearing upon the question of the unity of title, and have concluded that the finding of the trial court that such unity existed at the time the driveway was constructed, and at the time the mortgage was made to Home Owners Loan Corporation, which was foreclosed by them, and through which defendants obtained title, is not clearly against the weight of the evidence.

Plaintiff next contends that the driveway was not a way of necessity; that by making some changes in the improvements now on lot 16, a driveway could be built upon that lot, and that, therefore, defendants have failed to prove the degree of necessity of use required to establish the easement. To support this contention he cites and relies upon Catterall v. Pulis, 137 Okla. 86, 278 P. 202, Haas v. Brannon, 99 Okla. 94, 225 P. 931, Burling v. Leiter, 272 Mich. 448, 262 N.W. 388, 100 A.L.R. 1312, and other cases from other jurisdictions. We do not think these decisions applicable to the instant case because of the factual difference involved.

The prevailing rule as to the degree of necessity requisite to the creation of an easement by implication, or quasi easement, is that it be only such as is necessary to the reasonable enjoyment of the property granted. 9 R.C.L. 763, § 27; 17 Am. Jur. 954, § 44; 19 C.J. 919, § 112; Tiffany on Real Property (3d Ed.) vol. 3, § 786; 34 A.L.R. 234, note.

This court has repeatedly followed the prevailing rule above announced. Curry v. Southwall Corporation, supra; Buttrill v. Stanfield, 198 Okla. 374, 178 P. 2d 889.

In Curry v. Southwall Corporation, supra, we said:

"Where the owner of two or more adjoining lots employs one so that the other derives a benefit of a continuous, permanent and apparent nature from the other, and sells one in favor of which the quasi easement exists, such easement, being necessary to the reasonable enjoyment of the property granted, will pass to the grantee by implication. 28 C.J.S., § 31, p. 687."

The facts developed at the trial of the instant case bring it squarely within the rule above announced. From the record it appears obvious that the driveway in question was constructed for the ultimate purpose of serving the residence on lot 16, and another residence which the Sabins intended to erect on lot 17. It further appears that the residence on lot 16 was constructed, and the yard on said lot landscaped, upon the theory and with the intent and purpose that the driveway in question was to be an accessory to lot 16, and would be available for the use of the owners thereof. It also appears that to construct an independent driveway upon lot 16, it would be necessary to materially change that portion of the residence adjoining the driveway, and the landscaping of the front yard.

Plaintiff urges that defendants knew, or by inquiry could have learned, at the time they purchased lot 16, that the

driveway was not upon that lot. Under the rule above announced we consider their knowledge or lack of knowledge immaterial. The driveway was obviously constructed for the benefit and use of lot 16, and under the rule announced above, was attached to it by implication regardless of the knowledge or lack of knowledge on the part of defendants at the time they purchased lot 16.

The finding of the trial court that the use of the driveway was reasonably necessary to the beneficial enjoyment of that lot is not clearly against the weight of the evidence.

Plaintiff does not contend that the easement, if it in fact existed, was not included in the mortgage made by the Sabins to Home Owners Loan Corporation, or that it did not pass to defendants by the foreclosure and sale of the property, and its later sale to the defendants by the purchaser at the foreclosure sale. Therefore, we do not pass upon that question.

Affirmed.

HURST, C.J., DAVISON, V.C.J., and RILEY, BAYLESS, GIBSON, and ARNOLD, JJ., concur.

