**LUTU, AFOA, TUPUA, and TAESALI FAMILIES
by S. A. Lutu, Plaintiffs**

**v.**

**SE'ESE'EI PETELO, Defendant**

No. 15-1956

High Court of American Samoa

Civil Jurisdiction, Trial Division

[Land: "Punaoa" in Fagatogo]

August 24, 1956

ARTHUR A. MORROW, *Chief Judge;* MALEPEAI, *Associate Judge;* and FAUMUINA S., *Temporary Associate Judge.*

OPINION AND DECREE

Heard at Fagatogo on July 26 and 27 before MORROW, *Chief Judge,* MALEPEAI, *Associate Judge,* and FAUMUINA S., *Temporary Associate Judge.*

S. Lutu, counsel for the Lutu, Afoa, Tupua and Taesali Families.

Petelo, counsel for Se'ese'ei Petelo.

OPINION OF THE COURT

MORROW, *Chief Judge.*

The Lutu, Afoa, Tupua and Taesali Families acting by S. A. Lutu filed their petition seeking the eviction of defendant Se'ese'ei from the land Punaoa in Fagatogo. We consider Se'ese'ei's husband Petelo to be a defendant also since he is occupying Punaoa with her. It was apparent during the hearing that the plaintiffs were seeking his eviction also.

253

The Lutu, Afoa, Tupua and Taesali Families, plaintiffs, are the owners of certain lands in which is included the land Punaoa. While the four families own their lands together, they have nevertheless divided them up with respect to the right of possession, the possession of a part of the land being assigned to the Lutu Family for its use, the possession of a second part to the Afoa Family for its use, the possession of a third part to the Tupua Family for its use and the possession of the fourth part to the Taesali Family for its use. See the opinion of this Court (Appellate Division) in *Tuloto and Pauesi v. Taesalialii*, No. 6-1954. The possession is, therefore, subject to the control of that family in accordance with Samoan customs. S. A. Lutu is the registered matai of that family.

Defendant Se'ese'ei is not a blood member of either the Lutu, Afoa or Taesali Families. She was related through her mother to the wife (now deceased) of Afoa Molioo who was the same person as Lutu Molioo. The connection was through the Atofau Family in Leone. Se'ese'ei's testimony and that of her husband Petelo support these conclusions as does the testimony of witnesses Lutu, Afoa and Faumuina Tolopa. Petelo is not a blood member of any of the four families.

Because of Se'ese'ei's mother's relationship to the wife of Afoa Molioo (who as stated was also Lutu Molioo) permission was given to Se'ese'ei's mother by the matai of the Lutu Family to occupy and use the land Punaoa. This was before 1930. When Petelo married Se'ese'ei in 1930 or shortly thereafter, Lutu Fasuka, the successor to Lutu Molioo, gave Se'ese'ei and her husband Petelo permission to occupy and use the land and they have occupied and used it ever since. While neither Se'ese'ei nor her husband were blood members of the Lutu Family, they were nevertheless, considered as members of that family, and rendered services to the Lutu title in accordance with Samoan customs.

However, they ceased rendering service some years ago. Lutu testified that this occurred in 1946; Petelo, that it occurred two years ago.

In 1950 some difficulties arose between matai Lutu on the one side and Se'ese'ei and Petelo on the other. This grew out of the desire of Lutu to build a house on Punaoa for his sister who was getting married. The then Attorney General Neely was called in to straighten up the matter which he did. Mr. Neely prepared a memorandum dated Feb. 20, 1950 setting forth an oral agreement between Lutu and Petelo which he put in the Attorney General's files with copies to Lutu and Petelo.

The memorandum recites that "Petelo agreed that Chief Lutu might have a plot of ground (meaning a part of the land Punaoa) on which a dilapidated fale is now standing. Petelo agreed to remove that fale. Chief Lutu wants to have the right to build on that location without question." And on the part of Lutu it recites that "Chief Lutu stated that so far as he was concerned, Petelo will not be disturbed in his enjoyment of the remainder of the property including a large palagi-type fale and that Petelo and his children might live there on that communal land without any interference on the part of Lutu in the future."

Petelo and Se'ese'ei base their resistance to this eviction proceeding upon the above agreement despite the fact that they have not rendered service to the Lutu title for two years, according to Petelo, and for ten years according to Lutu.

█ In deciding this case it is to be remembered that Punaoa is the property of the four families with the right of possession in the Lutu Family. Punaoa is not the property of Se'ese'ei and Petelo. They are occupants by permission only. They have ceased to render service in accordance with Samoan customs relating to people who occupy com-

munal land with permission of the matai. They have not only failed to render any service for at least two years, but have refused to render service. When the oral agreement was made, it was of course made in the light of Samoan customs and subject thereto. It did not operate to transfer the ownership of Punaoa to Petelo or his wife Se'ese'ei. It is to be noted that neither Lutu nor Petelo signed the memorandum. It is a statement of the then Attorney General only as to what the oral agreement was. Conceding the truth of the memorandum, and we believe it to be truthful, nevertheless it did not excuse Petelo and Se'ese'ei from rendering service in accordance with Samoan customs. The fact that Se'ese'ei and Petelo rendered service for at least 16 years to the Lutu title in accordance with Samoan customs is sufficient evidence to prove that it was intended that service should be rendered.

We have held in a number of cases of this type where one person, not a blood-member of the family, is permitted to occupy communal family land of another family (and this is quite common in Samoa), there being no lease and no conveyance, that the occupant has a license only without possessing any estate or interest in the land. There is no intention on the part of the matai (acting in behalf of his family) to grant an estate or interest in the land. *Sa-Lemeanai Family and Leasiolagi of Asu for the Fao Family v. Tomasi and Tulei of Iliili*, No. 22-1951 (H.C. of Am. S.) ; *Heirs of Lemeanai Family v. Iosia of Tafuna*, No. 20-1953 (H.C. of Am. S.) ; *T. Magalei et al. v. R. S. Tago Sianava*, No. 23-1955 (H.C. of Am. S.).

The defendant Se'ese 'ei and Petelo have failed and refused to render service. In addition Se'ese'ei used some foul, filthy, and insulting language publicly when speaking of Lutu, the matai of the Lutu Family. The public use of such language (it is not necessary to repeat it here) has

brought shame and disgrace in the eyes of the public to the Lutu Family and its matai.

■ We have held that parol licenses are revocable even though the licensee has expended funds in reliance upon the license. Certainly the refusal to render service was a reasonable ground for revoking the license. We need not consider the foul, filthy and insulting language spoken publicly.

The defendant Se'ese'ei and Petelo her husband have expended a substantial amount of money in building a house on Punaoa. The Court viewed the land and the house prior to the hearing, viewing being had in the presence of parties and counsel.

■ In its opinion in the above T. Magalei case the Court in discussing a license in reliance upon which there had been expenditures said:

"A license is 'An authority to do a particular act or series of acts upon the land of another without possessing any estate or interest therein. *Polley v. Ford,* 190 Ky. 579, 227 S.W. 1007, 1008; *Haas v. Brannon,* 99 Okl. 94, 225 Pac. 931, 936.' Black's Law Dictionary (3rd edition). The question then arises as to whether the Chiefs may legally revoke the license after Tago in reliance on it has cleared the land of small growth, improved it, put in plantations and built houses thereon, i.e. after the license has been executed.

"Some courts have held that such a license, although not an interest or estate in land, may nevertheless not be revoked. 'In many jurisdictions where a licensee has entered under a parol license and has expended money or its equivalent in labor, it becomes irrevocable, and the licensee acquires a right of entry on the lands of the licensor for the purpose of maintaining his structures, or, in general, his rights under his license and the license will continue for so long a time as the nature of it calls for.' 33 Am.Jur. 408 citing *Chesapeake Ohio Canal Co. v. Ray,* 101 U.S. 522, 25 L.ed. 792 and many other cases.

"On the other hand 'The courts of many of the states uphold the general rule that a parol license to do an act on the land of the licensor, while it justifies anything done by the licensee before revo-

cation, is nevertheless revocable at the option of the licensor, and this although the intention was to confer a continuing right, and money has been expended by the licensee on the faith of the license.' 33 Am.Jur. 410 citing *Hicks Bros. v. Swift Creek Mill Co.*, 133 Ala. 411, 31 So. 947, 57 L.R.A. 720 and a number of other cases.

"And 'In some cases, the view is taken that under the rule that a license is revocable although expenditures on the faith of it have been made, the licensee is not entitled to compensation for the cost of such expenditures or improvements upon the land of the licensor (citing *Foster v. Browning*, 4 R.I. 47). A majority of the cases, however, support the contrary view. According to these cases, if a license is revocable, the licensee, as between the parties, upon the revocation by the licensor of a license for the use of the latter's real property, is entitled to compensation or reimbursement for expenditures made by the former upon the property on the faith of the license (citing *Wynn v. Garland*, 19 Ark. 23 and many other cases.' 33 Am.Jur. 411.

"We think that under the circumstances of this case the license is revocable. We also think that the last mentioned rule declaring that the licensee is entitled to compensation for expenditures made in reliance on the license is more in accordance with the principles of ordinary justice than the rule that he is not.

"However, in view of the way of life of the Samoan people and their customs with respect to money, we think that it would be most impractical to require compensation to be made for expenditures in reliance on a license prior to revocation.

"The A. S. Code fully recognizes that the common law may not in all respects be suitable to conditions in these islands. In Sec. 1 it is provided that 'Laws applicable in American Samoa: The following are declared to be in full force and to have the effect of law in American Samoa: (a) such parts of the Constitution and such laws of the United States of America as shall, by their own force, be in effect in American Samoa; (b) this Code of Laws of the Government of American Samoa, amendments thereto, and executive orders, promulgated by the Governor of American Samoa; (c) so much of the common law of England as is suitable to conditions in American Samoa and not inconsistent with the aforesaid.'

"The Courts of American Samoa have been faced with this same problem before. We have held under circumstances similar to those in this case that the licensee may retain possession of the property and make use of it in accordance with the terms of the license until

such time as the value of the use of the property is equal to the value of his expenditures less the value (after they are torn down) of any buildings which he has erected on the land and can remove therefrom when he leaves."

We think that the law we applied in the T. Magalei case and have applied in other cases is applicable in the instant case.

It is our conclusion upon the facts as established that the plaintiffs are entitled to have the defendant Se'ese'ei and her husband evicted from Punaoa. However, to the end that justice may be done and in order that they may be compensated for the partial loss of their expenditures in respect to their house on the land, we think they should be entitled to continue to occupy and use Punaoa until January 2, 1959 with the privilege of removing their house therefrom on or before that date.

## DECREE

Accordingly it is ADJUDGED, ORDERED and DECREED that Se'ese'ei and her husband Petelo shall have the right to continue to occupy, possess and use for dwelling and plantation purposes the land Punaoa in Fagatogo until January 2, 1959 and that they shall have the right to remove their house on said land on or before that date, leaving any plantations they may have on the land on January 2, 1959 in an unharmed condition. Se'ese'ei and her husband Petelo are hereby ORDERED to vacate the land Punaoa by January 2, 1959.

Costs in the sum of $37.50 are hereby assessed against Se'ese'ei, the same to be paid within 30 days.