Richard T. STORY and Dorothy J. Story, Appellants,

v.

Robert A. HEFNER, Jr., Appellee.

No. 47667.

Supreme Court of Oklahoma.

July 22, 1975.

Rehearing Denied Oct. 7, 1975.

---

564

James E. Work, Shirk, Semtner, Work & Robinson, Oklahoma City, for appellants.

Kent F. Frates, Oklahoma City, for appellee.

DOOLIN, Justice.

The Apple Valley Recreational Club had its beginning in May of 1962. The Club maintained certain real estate which encompassed a large recreational lake developed by four tenants in common under the guidance of Robert Story, the defendant appellant, who initially held only an option to buy into the joint venture.

This initial agreement was terminated in September of 1964. In November of the same year, another agreement was executed also giving Story an option to purchase into the property and included a clause stating, "It is the intention of the parties that the premises be operated for the joint benefit of the parties and that each party shall contribute his proportionate share of the cost of maintaining and operating the premises."

In January of 1966, through the various buy-out agreements Story and Hefner, the plaintiff appellee, became sole tenants in common in the 260 acre tract.

From 1966 to 1974 Hefner and Story jointly utilized the lake for fishing and other recreational purposes. In May of 1967 the parties decided to divide the property into two individually owned tracts by the exchange of quit claim deeds. Although there was testimony that both Story and Hefner believed that the lake itself could not be divided, the new property line created by the deeds did run through and divide the lake. However, both parties continued joint use of the lake after the execution of the deeds.

Seven years after this division, Hefner brought the present action to enjoin Story from using the portion of the lake covering Hefner's property and asked the court for a declaratory judgment declaring that the Storys had no right to use or enjoy this portion of the lake. A temporary injunction was issued and Hefner erected buoys across the lake preventing Story from entering the part of the lake that Hefner considered to be his.

Story answered and cross-petitioned claiming a right to reasonable use of the entire lake surface and asking for a permanent injunction prohibiting Hefner from interfering with his reasonable recreational use of the lake.

The trial court entered judgment for Hefner and granted each party exclusive right to the use of the lake over his own land and denied the existence of an easement or license, or riparian rights which would allow the Storys to use the entire lake. Each party was permanently enjoined from trespassing upon the other's lake surface. The Storys appeal.

Hefner bases his claim on the unequivocality of the two bare quit claim deeds. Story does not deny the deeds but rather bases his defense on evidence that the *consideration* for the deeds was the continued use of the entire lake, since no money changed hands. Story contends that the finding of the trial court that the deeds gave each party exclusive right to the use of the lake is erroneous. We agree.

At trial, Hefner offered into evidence the two quit claim deeds which divided the property. In addition, he offered a map of the properties which showed that Story had access to all of his property without crossing the Hefner tract. Story, however, was not seeking access to or through Hefner's dry land. His defense was based on written and oral agreements, riparian rights and continuous recreational use that would tend to show that the intention of the parties at the time of the execution of the deeds was to allow the use of the entire lake surface to *both* parties, thus creating an implied easement. Story at no time sought to prohibit Hefner from using the entire lake.

Over the objections of Hefner, Story was allowed to introduce the prior agreements between the parties. His evidence also showed that after the quit claim deeds were prepared, but before they were executed, each party prepared a written separation agreement. Both agreements included a provision that would allow both parties the common use of the lake. Because of a disagreement as to other parts of the document, neither of these agreements was adopted.

 Story was properly allowed to offer evidence of these prior negotiations. The presence of a provision in the tentative contracts of *both* parties guaranteeing each party the right to reasonable use of

the entire lake is evidence of their intention at the time of the division of the property to continue to use the lake jointly.

While we agree with Hefner that in a case of equitable cognizance a judgment will be sustained on appeal unless it is found to be against the clear weight of the evidence or is contrary to law or established principles of equity, this Court must examine the record and weigh the evidence. *Nunn v. Osborne*, 417 P.2d 571 (Okl.1966). Evidence of the parties intentions and the prior agreements were properly admitted by the trial court and should be considered, for any competent and relevant evidence, including parol evidence, is admissible to prove an easement by implication.

An easement is the right of one person to go onto the land of another and make a limited use thereof. Easements may be expressly created by deed or come about by necessity or prescriptive use or as in the present case may be implied into a deed.

An implied easement is a creature of common law. It is based on the theory that whenever one conveys property he includes or intends to include in the conveyance whatever is necessary for its beneficial use and enjoyment and to retain whatever is necessary for the use and enjoyment of the land retained. An easement by implication is a true easement having permanence of duration and should be distinguished from a "way of necessity" which lasts only as long as the necessity continues.

Ordinarily an easement being an interest in land requires compliance with the Statute of Frauds. However, an easement implied from pre-existing use arises by inference of the *intention* of the parties at the time of the conveyance which may be established by parol. The inference is drawn from the circumstances under which the conveyance is made rather than from the language of the deed. The implication of an easement may always be prevented by language in the deed sufficiently explicit to negate it.

To establish an easement by implication there must first be a conveyance that divides one ownership into separately owned parts. At the time of the conveyance one part of the property must be being used for the benefit of the other part, creating a quasi-easement. The use must be apparent and continuous and must be reasonably necessary to the enjoyment of the quasi-dominant tract.

In determining whether the circumstances under which a conveyance of land is made imply an easement we must also consider whether reciprocal benefits result and the manner in which the land was used prior to the conveyance as well as the extent of the necessity for the enjoyment of the land. See 5 Restatement Property §§ 474–476, 25 Am.Jur.2d Easements §§ 24, 27–33 (1966), 28 C.J.S. Easements §§ 31, 33, 54, 69 (1966).

According to the trial record the court was aware of the aforementioned requirements for the existence of an implied easement in favor of the Storys. It recognized that all of the elements were present except for the necessity to the full enjoyment of the Story's property. We hold that an adequate necessity does indeed exist.

The necessity requisite to the creation of an easement by implication is not an absolute necessity, a reasonable necessity is sufficient. Where, during unity of title, an apparent permanent and obvious servitude is imposed on one part of an estate in favor of another, and such servitude, at time of the severance, is in use and is reasonably necessary for fair enjoyment of the dominant estate, a grant or reservation of the right to continue such use arises by implication of law. *Keller v. Fitzpatrick*, 204 Okl. 192, 228 P.2d 367 (1951); *Gorman v. Overmyer*, 199 Okl. 451, 190 P.2d 447 (1947).

In 1962, the parties stocked the lake with $3,000.00 worth of bass. Story introduced evidence and it was undisputed that if the

injunction was continued, he would no longer be able to water ski on the lake or fish for bass which migrate to the deeper water near the dam in the summer. The dam is located at the north end of the lake and is included in Hefner's property. Story also agreed to maintain and has maintained a drain on the dam keeping it free from debris. If the drain is not properly cleared, his cabin, well house and other improvements would become flooded. The injunction prevents Story's access to the drain.

■ The lake is a recreational lake. It is used for skiing and fishing. The use of the entire lake surface is not merely a convenience, it is necessary for this use. Thus, it is necessary for the fair enjoyment of the Storys' estate and a reservation of their right to continue such use arises by implication of the law.

Hefner relies on *Haas v. Brannon*, 99 Okl. 94, 225 P. 931 (1924), claiming that Story's use of the Hefner portion of the lake after the exchange of the deeds was based on an oral license and thus was revocable at will. The Court defined a license in *Haas v. Brannon*, as "an authority to do a particular act upon another's land without possessing an estate therein. * * * It is distinguished from an easement which implies an interest in the land to be affected."

An oral license ordinarily can be revoked at the pleasure of the licensor with two exceptions: a license coupled with an interest is not revocable; first, where a continuation of such interest is necessary for him to make use of such interest; and second, where the licensee has incurred expenses in making permanent improvements to the property. *Anchor Stone and Materials Company v. Carlin*, 436 P.2d 650 (Okl.1967).

In this case the use arose not from permission or even from prescriptive use, but from an absolute title to an undivided one-half interest in the lake and from the continued use of the lake prior to, as well as after the execution of the deeds. We hold that Story's use of the Hefner portion of the lake was not a revocable license, but rather an implied easement.

Story also bases his claim to the use of the lake surface on the doctrine of riparian rights as applied to lakes in *Snively v. Jaber*, 48 Wash.2d 815, 296 P.2d 1015, 57 A.L.R. 560 (1956). However, it is unnecessary to reach this question in deciding Story's rights.

■ This case was tried to the court, sitting as a court of equity. He who seeks equity must do equity and come into court with clean hands. This applies with full force and effect to a suit to obtain an injunction. *Ivan v. Roder*, 431 P.2d 321 (Okl.1967). Story, over the years has helped to develop and improve the lake, the primary use of which is for recreational purposes. He has used the entire lake for over ten years for fishing and skiing. Hefner, by erecting buoys, and by instituting this suit has sought to interfere with Story's continued use and enjoyment of the lake for the purpose for which it was intended.

■ A quasi-easement for use of the lake existed at the time of the separation. The deeds contained no express provision eliminating this use. Story's use has been continuous, apparent and necessary for his enjoyment. Thus, the deeds are ineffective to do away with Story's reasonable use of the entire lake for recreational purposes and an easement for such use must be implied into the deeds.

Story has cross-petitioned for an injunction to restrain Hefner from interference with his reasonable recreational use of the lake. He does not ask for access to Hefner's dry land. He does not desire to prohibit Hefner from using the entire lake, a relief the trial court granted, which Story did not seek. Trial Court is reversed except as to portion of judgment dividing costs one-half (½) to each party which is affirmed.

Appellants cross petition to enjoin Hefner from interfering with his reasonable recreational use of the lake is granted.

HODGES, V. C. J., and LAVENDER, BARNES and SIMMS, JJ., concur.

WILLIAMS, C. J., and DAVISON and IRWIN, JJ., dissent.

DAVISON, Justice (dissenting).

I am unable to agree with the majority opinion and therefore respectfully dissent.

The facts show that the lake in question is a landlocked lake, fed only by rainfall. The lake covers approximately thirty acres and stocked with fish purchased by the parties hereto and their predecessors in title.

In 1967 the parties entered into a contract which led to each party delivering a Quit Claim Deed to the other, whereby each party conveyed to the other their one-half interest in the lake and abutting land as particularly described in said deeds.

The evidence disclosed that Hefner's investment in lands surrounding and adjacent to the lake was approximately $600,000.00, while the investment of lands of Story was slightly over $16,000.00.

In leading up to the agreement to exchange of said deeds the intentions of the grantors were shown by certain testimony of the parties.

Certain testimony of Hefner, leading up to the Quit Claim Deeds was as follows:

"Q. Did you meet with Mr. Story on about April 16, 1967?

"A. Yes, sir, at my house.

"Q. And what was the subject of that conversation?

"A. We agreed to divide the property.

"Q. And did you tell, did at that conversation, did you tell Mr. Story why you wanted to divide the property?

"A. Yes, sir.

"Q. What did you tell Mr. Story?

"A. I told him that I would like to develop a ranch in the area, that there was some property that would shortly be for sale adjoining it, and I asked him if he'd like to go in with me and buy it. You want the conversation? He said no, that he didn't have the money and he wasn't interested either in ranching. So I told him I would like to get it divided final and completely so that I could go ahead and acquire property.

"Q. What was the date of this conversation?

"A. April 15th, 1967.

"Q. And that was at your house?

"A. Yes, sir, and that's what I told him, and he said he would divide it with me.

"Q. Was there to be anything done to document this division?

"A. He asked me to prepare the deeds, which I did.

"Q. And are those the deeds which are marked Plaintiff's Exhibits 1 and 2.

"A. Yes, sir.

"Q. Now, did you subsequently meet with Mr. Story for the purpose of exchanging these deeds?

"A. Yes, he came to my office on April 27th, 1967. I handed him a fully executed deed from myself and my wife to him. I handed him a deed from Mr. & Mrs. Story to me for my part that we agreed on, and my deed conveyed to him the part he'd agreed to, his deed would convey to me the part that I was to have in the division. He said, 'I'll take this deed and have Dorothy sign it and return it to you today.'"

Story testified on cross-examination, in part, as follows:

"Q. And then in 1967, in April, you and Mr. Hefner divided the property by way of Plaintiff's Exhibits 1 and 2, is that right?

"A. Correct.

. . . . . .

"Q. Did he state that he wanted to divided this property so that he could have absolute ownership in part of it?

"A. Yes.

"Q. And that you would have the absolute ownership in your part, is that right?

"A. Correct."

By the conveyances of the Quit Claim Deeds the parties divided the lake property into two individually owned tracts.

The judgment of the trial court, after describing the lands involved in the Quit Claim Deeds, states as follows: "By way of said Quit Claim Deeds, each of the parties acquired the exclusive right to the use of the lake over their own land as specifically described in said Deeds.

"Further, neither party has an easement over the property of the other, by implication, or otherwise.

"Further, there is not sufficient evidence to support the theory that a license exists in favor of either party for the use of the property of the other party.

"Further, the Court finds the issues in regard to any riparian rights in this particular lake in favor of the plaintiff and against the defendants.

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the plaintiff and the defendants are each granted a permanent injunction against the other party or parties, respectively, and the others' heirs, personal representatives, successors or assigns, prohibiting the trespassing upon all of the others' land or water."

The law pertaining to the ownership of the water under land in a case such as this where the lake is landlocked and fed by rainfall is governed by the first sentence of Title 60 O.S.1971, § 60, which reads, as follows:

"The owner of the land owns water standing thereon, or flowing over or under its surface but not forming a definite stream."

It is true that after the Quit Claim Deeds were executed the parties and their guests continued to use the whole lake until Hefner built the fence across the lake on the dividing line of their respective property. Hefner built the fence after he became dissatisfied with so many people, as guests of Appellant, using the lake. During this time, however, the parties used the whole lake as permissive and not adverse. This permissive use did not ripen into an easement or prescriptive right. *Curry v. Hill*, Okl., 460 P.2d 933.

The majority opinion is written on the theory that Appellant had an easement by implication to enjoy the use of the whole lake and relies heavily on this point by citing the cases of *Keller v. Fitzpatrick*, 204 Okl. 192, 228 P.2d 367, and *Gorman v. Overmyer*, 199 Okl. 451, 190 P.2d 447.

The last above cited cases are readily distinguishable from the case at bar. These cases both involve facts where the one owner of two separate lots established driveways between the two lots, and part of the driveway being constructed on each of the two lots. The cases hold that where the owner of two or more adjoining lots employs one so that the other derives a benefit of a continuous permanent and apparent nature from the other, and sells the one in favor of which the quasi easement exists, such easement, being necessary to the reasonable enjoyment of the property granted, will pass to the grantee by implication.

In the present case at the time the Quit Claim Deeds were executed the property was owned jointly by the parties involved. By the Quit Claim Deeds the parties divided the lake property into two individually owned tracts. When their deeds were executed and delivered a whole new ballgame came into being. The written deeds are unambiguous. The parties made a new bargain and should be required to live by it.

In a case of equitable cognizance, court will examine the record and weigh evidence, but the judgment will be sustained on appeal unless it is found to be against the clear weight of the evidence or is contrary to law or established principles of equity. *Nunn v. Osborne*, Okl., 417 P.2d 571.

In my opinion the judgment of the trial court is not against the clear weight of the evidence or contrary to law. I believe the trial court should be affirmed.

I am authorized to state that WILLIAMS, C. J., and IRWIN, J., concur in this dissent.