**Pamela Sue BIRDSELL, Appellee,**

v.

**Kenneth Gary BIRDSELL, Appellant.**

**No. 58054.**

Court of Appeals of Oklahoma,
Division No. 4.

June 14, 1983.

Rehearing Denied July 6, 1983.

Certiorari Denied Oct. 18, 1983.

Released for Publication by Order
of the Court of Appeals
Oct. 21, 1983.

Kerry W. Caywood, Park, Nelson, Caywood & Park, Chickasha, for appellee.

Carroll E. Gregg, Miskovsky, Sullivan & Gregg, Oklahoma City, for appellant.

DE MIER, Judge.

The parties to this appeal were divorced December 16, 1980. Both parties were represented by counsel at the divorce proceeding. Appellee/mother was granted exclusive care, custody and control of the minor children and appellant/father was granted reasonable and seasonable visitation in the mother's home.

On August 28, 1981, the father filed a motion to modify the divorce decree alleging that it was impossible for him to visit his children in his ex-wife's home.

The trial court overruled the motion. We reverse the trial court. The decree is to be modified in accordance with this opinion.

I

The evidence in support of the father's motion to modify was as follows: The father had remarried, was gainfully employed and current in his child support payments. However, his ex-wife made it difficult and unpleasant for him to visit his children, both girls whose ages now are approximately fifteen and six. A pornography charge had been filed against the father seven years earlier and dismissed. In this regard a doctor who specialized in psychiatry testified that the father and his new wife had come to him for premarital counseling and that the father had a slight interest in pornography that caused no difficulty. The doctor was asked the following questions and made the following responses:

"Q Is there anything, or any doubt in your mind whatsoever from your discussions over seven months with these people that the child would in any way be exposed to an unhealthy situation by visitation with him?"

"A I'm not aware of any harm to the child that would result as a result of her being with Mr. Birdsell...."

"Q Has he ever indicated to you any form of perverted attitude, perverted behavior?"

"A No, sir."

"Q Has Mrs. Birdsell ever indicated to you that she had any form of perversion or unusual behavior?"

"A No, sir, she has not."

The mother testified that after the father had moved out she found some photographs and books which she considered pornographic. She testified she felt the father had taken the pictures himself, however, she admitted that this was only opinion and that she had no personal knowledge of who the photographer was. She further testified that the children had found some of the photographs earlier in the marriage and brought them to her. She apparently left them in the house after she found them.

II

It is the appellate court's duty under these circumstances, to weigh the evidence and, unless there has clearly been an abuse of discretion, affirm the judgment of the trial court. *Story v. Hefner*, Okl., 540 P.2d 562 (1975); *King v. Rainbolt*, Okl., 515 P.2d 228 (1973). In this case there has been a clear abuse of discretion. We therefore reverse the judge on the father's motion to modify the divorce decree.

In making a determination on the father's motion to modify the trial judge had before her supporting evidence uncontroverted by the mother. However, the evidence used by the mother to defeat the motion consisted of some photographs and paperback novels which the mother felt were pornographic. The mother was unable to say with any certainty that she knew the source of these materials. Her only evidence of the source was negative in

nature. This is demonstrated by the following testimony elicited from her during cross-examination:

"Q Do I understand that not a single picture that is produced here in court today, that you're asking the Court to accept as an Exhibit, that you, yourself, know for a fact that Mr. Birdsell took himself. As far as you know, other people gave them to him, is that not correct?"

"A That's what he states."

"Q You don't know any different, do you? For a fact, do you know any different?"

"A I feel I do."

The mother then testified how she came into possession of the exhibits she offered:

"Q Where did you find these ten photographs, or where did you acquire these?"

"A In a box in his closet."

"Q When?"

"A Right before he left, moved out of the house."

"Q I'll hand you what has been marked previously as Plaintiff's Exhibit Two, and ask you what this is."

"A These are some more pornography that was found in books that he had."

"Q When did you find those?"

"A After he had moved out."

"Q Where did you find Plaintiff's Exhibits Three and four?"

"A Last Christmas during the school break my children wanted to put together a race car set. When Lesha, the oldest daughter, got it down, they emptied it all out. She picked up the Polaroid box, and saw what was in it, and brought them to me. And then Ashley pulled out the negatives and was running through the house with those."

"Q The children found these hidden in their toys, did they?"

"A Yes, they did."

"Q I'll hand you Plaintiff's Exhibit Number Seven, and ask you what that is please?"

"A It's a bunch of his books."

"Q Where did you find these books?"

"A In a bottom dresser drawer."

"Q This was after he moved out?"

"A Yes."

The mother's proof of the source of these materials was completely negative. She admitted that she was aware of these items being in her home before the divorce. Assuming the father put the pictures where they were found, or even that he took one or more of them, there is absolutely no showing of any relationship between that and the father's fitness to have custody. For some reason the mother kept them and presented them long after the father was gone in order to defeat his motion.

It is therefore ironic that the very material relied upon to defeat the motion had not been in the father's possession since he moved out of the home. Moreover, this pornography, which the mother wished to protect her children from, had been retained by her, in the family home, for several years. Regardless of the mother's motive for retaining these materials, none of them should have been introduced as evidence. If we examine 12 O.S.1981 § 2401, we find that these materials are unable to pass the threshold of relevance. Title 12 O.S.1981 § 2401, states that:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

The pictures and books cannot meet the test. The term "relevant" is frequently made to appear more complex than it really is. It simply means that which has a *tendency* to prove a proposition if that proposition has probative value as to an issue in the case. This evidence has a tendency to prove one thing: The mother has in her possession pictures and books which deal with sex. The source of these pictures or the photographer was never established, nor was the source of the books. There is just as much circumstantial evidence that they originally belonged to the mother as the father.

We are unable to find any probative value in these exhibits.

All of the mother's exhibits one, two, three, four and seven should therefore not have been admitted. Their admission constituted a clear abuse of discretion by the trial judge.

### III

■ We find from the evidence that there was a substantial change of condition to support modification of the divorce decree, and that it would be in the best interests of the children to do so. The failure of the trial court to so find was a further abuse of discretion. The father has faithfully paid his child support. However, he has been prevented from having a parental relationship with his children. This cannot be tolerated.

We order the divorce decree be modified as follows: The father is to have custody on the first and third weekends of each month from Friday at 6:00 p.m. to Sunday at 6:00 p.m. The mother and father are to alternate Christmas and Thanksgiving. The father is to have custody on Christmas Day from 9:00 a.m. to 7:00 p.m. in odd years beginning this year, Christmas Eve from 6:00 p.m. to 10:00 p.m. on even years, and Thanksgiving Day on even years. In addition the father will have custody two weeks in each summer at a time not to interfere with school. The father must give 30 days written notice of the date of the two weeks he desires custody. Child support shall be suspended during this two week period.

Each party shall pay their own attorney's fees and costs connected with this appeal.

BRIGHTMIRE, P.J., and STUBBLE-FIELD, J., concur.