## CONSOLIDATED FUEL CO. v. COURSEN. Adm'x.

No. 12323—Opinion Filed Oct. 9, 1923.

Rehearing Denied Nov. 6, 1923.
(Syllabus.)

1. **Master and Servant—Action for Negligent Death of Mine Employe—Sufficiency of Petition.**

Record examined, and held, that the petition stated a cause of action and the court did not err in overruling the same.

2. **Same—Sufficiency of Evidence.**

Record examined, and held, there was sufficient evidence to submit the question of liability of the defendant company for the death of the deceased to the jury, and the court did not err in overruling the demurrer to the plaintiff's evidence, nor in failing to peremptorily instruct the jury to return a verdict for the defendant.

3. **Same—Sufficiency of Instructions.**

Record examined, and held, the instructions given by the court fairly submitted to the jury the question of fact, and there was no error in giving the same, nor in refusing the instruction requested.

4. **Same—Verdict—Excessive Recovery.**

Record examined, and held, that under the evidence the verdict was not excessive.

Error from Superior Court, Okmulgee County; H. R. Christopher, Judge.

Action by Nora Coursen, administratrix of estate of George W. Coursen, deceased, against the Consolidated Fuel Company. Judgment for plaintiff, and defendant brings error. Affirmed.

E. R. Jones, and L. W. Randolph, for plaintiff in error.

Linebaugh & Pinson, for defendant in error.

McNEILL, J. Nora Coursen, administratrix of the estate of George W. Coursen, deceased, commenced this action in the superior court of Okmulgee county against the Consolidated Fuel Company to recover damages caused by the alleged wrongful death of her son, George W. Coursen. The case was tried to a jury, and a verdict rendered

in favor of the plaintiff in the sum of $6,-500.

To reverse this judgment, it is first contended that the court erred in overruling the demurrer of the defendant to the plaintiff's petition. The petition alleged the plaintiff's intestate was an employe of the defendant company, and working in its mine, and further alleged certain facts which constitute the acts of negligence relied upon as the proximate cause of the death of deceased. The petition does not refer to the statutes of the state, but most of the acts of negligence alleged are the failure to comply with certain duties enumerated in sections 7604, 7605, and 7609, Comp. Stats. 1921. The company contends the petition fails to state a cause of action, because it fails to allege that there were more than ten persons employed in the mine, and for that reason fails to bring the case within the statutory provisions.

Section 7604, Comp. Stat. 1921, provides:

"Every operator shall employ a competent and practical inside overseer for each mine employing ten or more persons inside, to be called mine foreman, who shall have charge of the inside operations of the mine, and shall see that the provisions of this chapter are strictly enforced. * * *"

The petition is very lengthy, and among the allegations are that it is the duty of the company through its mine foreman to visit and examine every working place therein and direct that every working place be secured by props or timber and not permit any of its employes to work in an unsafe place, and contains many allegations that the mine foreman was negligent in performing those duties. It contains the further allegation:

"That on said day and date, it was the duty of the defendant company to furnish all miners, at work in said mine, with such timbers, props, and cap pieces as was necessary to keep their working places in safe condition, which said timbers, props and cap pieces were to be sawed square at the ends and in proper length to fit the working place, and to deliver such timbers, props and cap pieces at the face of the miners' working place in said mine; that it was also the duty of defendant company, as far as possible, to see that all dangerous slate and rock overhead in said mine was taken down or carefully secured against falling."

The petition alleges the company failed to do any of the acts which it was alleged was its duty to perform. The statute provides that in mines employing ten men or more, it shall be the duty to employ a mine foreman. The petition contains the allegation

that there was such a mine foreman employed, and the company through its mine foreman was negligent in certain matters. The demurrer was a general demurrer, and the only ground alleged in the same was the petition failed to state a cause of action in favor of the plaintiff and against the defendant. We think there is no question but that the petition states a cause of action. Counsel for plaintiff in error cites numerous cases of courts from other states, which are not identical with ours. By applying the law announced in the case of, Corrigan v. Oklahoma Coal Co., 68 Okla. 37, 171 Pac. 47, the petition states a cause of action.

It is next contended that no cause of action was proven against the defendant and the court erred in overruling the demurrer of the defendant to the evidence of the plaintiff and in failing and refusing to give a peremptory instruction requested by the company. In considering this question, it is necessary to call attention to an admitted fact, to wit: Roy Wright, an experienced miner, was doing certain work in the mine, when a stone or rock fell upon him, and George Davis, who was working with Wright, called for help, and Coursen, who was working a short distance therefrom, went to assist in rescuing Wright; and while attempting to remove the rock from Wright a second rock fell upon him, killing him instantly. Wright was also killed. The plaintiff in error in its brief states its position as follows:

"The law is well settled in cases of this kind that where one person sees a person in imminent peril through the negligence of another and goes to his rescue and is injured, such rescuer may recover, providing he, himself, is free from contributory negligence. In every case, however, even if it appears that the rescuer is free from negligence contributing proximately to his injury, yet he is still unable to recover unless negligence is shown on the part of the defendant, bringing about the perilous situation."

The company has cited numerous cases to support this proposition of law, and then states:

"The case was tried on this theory, and therefore it becomes necessary to determine whether or not, from all the evidence offered, plaintiff in error was negligent, in so far as concerns Roy Wright, whom George W. Coursen was seeking to rescue, and in so far as his working place was concerned."

The parties both brief the case upon the above theory, and we will decide it upon that theory. As stated by plaintiff in er-

ror, the question necessary to consider is whether or not from all the evidence offered plaintiff in error was negligent in so far as concerned Roy Wright and in so far as the working place where he was working was concerned. Plaintiff in error contends the evidence is insufficient to support a cause of action either by common law or under the mining statute of this state.

We will first consider whether the evidence is sufficient to submit to the jury the question of whether the plaintiff was negligent under the mining statute. The plaintiff in error contends that no cause of action existed under the mining statute, for the reason the petition did not allege that the plaintiff in error was operating a mine employing ten or more men and therefore obliged to comply with the mining laws. As heretofore stated, the petition did not allege that fact in direct language, but it did allege the company employed a mine foreman, and under that statute a mine foreman is only necessary to be employed in mines having ten men or more. The record discloses the mine was a large mine, containing some 200 working stations and was idle the day in question, although at least eight men were employed on that day. We think there is nothing in this contention.

Section 7604 defines the duties of the mine foreman and provides, in substance, that the mine foreman shall keep a careful watch over the ventilating apparatus, the air way, and traveling ways, and shall instruct, and, as far as possible see, that as the miners advance in their excavations all dangerous slate and rock overhead are taken down or carefully secured from falling therein or on the traveling and hauling ways, and that sufficient props, caps, etc., are sent into the mine, when required, which props shall be cut square at both ends, as near as practicable to the proper length for the places to be used and which props shall be delivered by company men.

Section 7605, Comp. Stat. 1921, provides, among other things, in substance, that the mine foreman shall see that all miners in said mine are supplied at all times with timber, props, cap pieces, as are necessary to keep their working place in a safe condition, such timbers to be sawed square as near as possible in proper length to fit the working place and to be delivered at the face of the miner's working place by company men. In case the timber cannot be supplied when required the foreman shall instruct all persons to vacate all such working places until supplied with the timber needed.

Section 7609, Comp. Stat. 1921, provides, in substance, that the mine foreman shall visit and examine every working place in the mine at least once every day, where the miners of such place are or should be at work, and shall direct that each and every working place shall be properly secured by props, and no person shall be directed or permitted to work in an unsafe place unless it might be for the purpose of making it safe.

To support the allegations of the petition, George Davis testified substantially as follows: That he and Roy Wright were working on the seventh east entry, by direction of the mine foreman, opening up a cross-cut; that Coursen and a man by the name of Cunningham were working at the eighth east entry on the said cross-cut and the parties were working toward each other, widening the cross-cut for "machine sly." About 12 o'clock Davis and Wright fired a shot and then ate dinner with Coursen and Cunningham. Lorenz, the foreman, came and examined the place where the shot had been fired, and Wright asked him how it looked, and the foreman answered "all right." Then Davis and Wright went to work. Wright was building up a gob wall, when a rock fell on Roy Wright. Davis hollered for help and Coursen came from the eighth east entry, called for a bar, and was leaning over the rock that was on Roy Wright, when a rock fell on him. Davis testified that no props, timbers, or cap pieces were at the working place and it was about 16 feet from Coursen's body to the nearest prop.

Mr. Clark testified, in substance, that he assisted in cleaning up the rock and that there was one prop under the rock and it was not sawed square at the end. It was something like 20 feet from the rock down the entry to the first prop. To make the entry safe from falling rock, a prop should have been about three feet. Others testified that the props should have been about three feet apart.

Mr. Lorenz testified that as foreman of the mine he had directed Wright where to work and that it was the duty of the practical miner to sound the roof where the shot was fired and he, himself, was a practical miner, but admitted that he did not sound the roof because he did not have the tools with him. He testified further that the props should be four or five feet apart.

There was also evidence in the record that the place where Wright and Davis

were directed to work was on a "squeeze" and a "squeeze" is an unsafe place in which to work. While there is a conflict in the evidence, yet in determining the question of whether there is sufficient evidence to go to the jury, the court is not permitted to weigh the evidence. This court in the case of Quapaw Mining Co. v. Cogburn, 78 Okla. 227, 190 Pac. 416, in the 6th, 7th, and 8th paragraphs of the syllabus, stated as follows:

"(6) Sections 3983 and 3984, Revised Laws 1910, prescribing certain duties of mine operators toward employes, including the duty of daily inspection, apply to the operators of lead and zinc as well as coal mines.

"(7) The violation of the duty expressly imposed by a statute upon the owner or operator of a mine to his employes or to the public is negligence which prima facie imposes liability for damages resulting therefrom.

"(8) Where an employe at work in a mine is injured by the falling of a loose rock, the employer's liability depends not upon whether it had actual or constructive notice that the rock was loose, but upon whether it had failed to perform its statutory duty to secure loose rock from falling."

The facts in this case bring this case squarely within the rule announced in that case, and we think there was no error in the court overruling the demurrer or submitting the question to the jury. Having reached this conclusion, it is unnecessary to determine regarding the common-law liability.

It is next contended that the court erred in giving instructions Nos. 4, 5, 6, 7, and 8. Instruction No. 4 advised the jury if they believed from a fair preponderance of the evidence that the timbers furnished in defendant's mine where Wright was, were not sawed square at both ends and the failure to have said timbers sawed square was the proximate cause of the death of deceased, then the verdict should be for the plaintiff, unless the deceased was guilty of contributory negligence. We see no error in this instruction. See Whitehead Coal Mining Co. v. Schneider, 75 Okla. 175, 183 Pac. 49, and cases therein cited.

Mr. Clark testified that he helped clear up the rock and found one prop under the rock, but it was not sawed square at the end, but was pointed or three-cornered shape, so there was evidence introduced to justify the giving of that instruction.

Instruction No. 6, in substance, advised the jury of what the statute required the company to do through its mine foreman, and further advised the jury if they believed that the company had failed, neglected, or refused to furnish to the employes at work, at the place where Coursen was killed, such timbers as were necessary to keep the place in a safe condition, and the failure so to do was the direct cause of the death of the plaintiff's intestate, the defendant was liable if decedent was not guilty of contributory negligence. Defendant, however, insists under the mining law and custom it was the duty of the men to make request for props, and until requests were made there could not be any recovery. This is not the law of this state, as announced in the case of Quapaw Mining Co. v. Cogburn, supra, wherein this court in the body of the opinion, on page 420, stated as follows:

"The defendant, therefore, cannot escape liability for its failure to perform its statutory duty on the ground that it did not know that the rock was likely to fall. No duty was imposed upon the plaintiff to keep a careful watch to see that loose rock did not fall upon him. He had the right to rely upon the performance by the master of the statutory duty to inspect and keep the roofs of the entries propped to prevent stone from falling. The theory of the defendant that it was only bound by ordinary diligence to furnish a safe place for its employes to work would deprive the statute of all force. It is not to be assumed that the legislature intended merely to declare that to be the duty which the common law already imposed upon him."

It is next contended that the court erred in giving instruction No. 7, where the court in substance advised the jury that the statute of Oklahoma made it the duty of the defendant company to cause its mine foreman in charge of the mine to direct that each and every working place be properly secured by props or timbers and not to permit or direct persons to work in an unsafe place, and if the jury found from a preponderance of the evidence that the working place in which the plaintiff's intestate was killed was not properly secured by timbers and by reason thereof was an unsafe place to work, and that said unsafe condition was the direct cause of plaintiff's intestate's death, then its verdict should be for the plaintiff, unless it found that the deceased was guilty of contributory negligence. It is contended that this amounted to a peremptory instruction to the jury. We think not. The instruction simply advised the jury of the statutory duty imposed upon the mine owner, and if the company had failed to comply with that duty

and the place was unsafe by reason of the failure to comply with the statutory duties, they should find for plaintiff, unless deceased was guilty of contributory negligence. Instruction No. 9 is very similar. We think there is no error in giving these instructions.

It is next contended that the court erred in refusing to give requested instructions Nos. 8, 32, and 1. No authorities are cited in support of the contention that the refusal of these instructions constituted reversible error.

It is next contended that the verdict is excessive. The record discloses that the deceased was 20 years of age and was earning approximately $120 per month and contributing a great portion of the same to the support of his father and mother. It is not contended that the jury were not properly instructed regarding the measure of damages, and the amount of recovery was a question of fact to be left to the jury, and we cannot say, under the facts, the verdict is excessive.

For the reasons stated, the judgment of the court is affirmed.

JOHNSON, C. J., and NICHOLSON, COCHRAN, and MASON, JJ., concur.